MINNIE P. CRONBACH *v.* ÆTNA LIFE INS. CO. *et al.*\*

(*Nashville.*   December Term, 1925.)

1. **CONTRACTS.**

Ordinarily, terms of written contract can only be changed by consent of parties or in accordance with provisions thereof authorizing change.   (*Post, p.* 366.)

2. **INSURANCE.** Mode of effecting change of beneficiary prescribed in policy must be followed, and mere unexecuted intention to change beneficiary is not sufficient.

In order to effect change of beneficiary in policy specifying mode of effecting change, mode prescribed must be followed, and mere unexecuted intention to change beneficiary is not sufficient.   (*Post, pp.* 366-368.)

3. **INSURANCE.**

Waiver by insurer of method of effecting change of beneficiary after death of insured is ineffectual as against original beneficiary.   (*Post, pp.* 366-368.)

4. **INSURANCE.**

Courts will give effect to insured's intention by holding change of beneficiary accomplished where he has done all that he could to comply with provisions of policy.   (*Post, pp.* 366-368.)

5. **EQUITY.** Maxim can only be invoked against party who has failed or refused to perform duty imposed on him.

Maxim that equity regards that as done which ought to be done can only be invoked when party against whom complaint is made has failed or refused to perform some duty imposed on him.   (*Post, p.* 368.)

Cronbach v. Aetna Life Ins. Co.

6. **EQUITY.** Maxim cannot be invoked to create right contrary to parties' agreement or in disregard of that for which parties stipulated.

Maxim that equity regards as done that which ought to be done cannot be invoked to create a right contrary to agreement of parties or in disregard of essential conditions for which parties have stipulated. (*Post, p.* 368.)

7. **INSURANCE.** Under life policy requiring change in beneficiary to be by written request, change will not be made where insured, after expressing intention to make change, became seriously ill and died before having recovered sufficiently to make change.

Under life insurance policy requiring change of beneficiary to be by written request, accompanied by policy, change in beneficiary will not be given effect where, after insured stated intention to make change, he became seriously ill before effecting it and died without having recovered sufficiently to do so. (*Post, pp.* 369-372.)

Cases cited and approved: McLaughlin v. McLaughlin, 104 Cal., 171; Courtor's v. Grand Lodge, etc., 135 Cal., 552; Rollins v. McHatton, 16 Colo., 203; Johnson v. N. Y. Life Ins. Co., 56 Colo., 178; Ellis v. Fid., etc., Co. of N. Y., 163 Iowa, 713; Ancient Order of Gleanors v. Bury, 165 Mich., 1; Knights of Maccabees of World v. Sackett, 34 Mont., 357; Thomas v. Thomas, 131 N. Y., 205; Schoenholz v. N. Y. Life Ins. Co., 234 N. Y., 24; Indep. Order of Foresters v. Keliher, 36 Or., 501; Deal v. Deal, 87 S. C., 395; Freund v. Freund, 218 Ill., 189; Ind. Nat. Life Ins. Co. v. McGinnis, 180 Ind., 9; Garner v. Bemis, 81 Fla., 60; Chance v. Simpkins, 146 Ga., 519; Douglass v. Eq. L. Assur. Soc., 150 La., 519; Met. L. Ins. Co. v. Tesauro, 94 N. J. Eq., 637; Nat. L. Ins. Co. of U. S. v. Brantigam, 163 Wis., 270.

Case cited and distinguished: Fink v. Fink, 171 N. Y., 616.

---

*Headnotes 1. Contracts, 13 C. J., Sections 604, 606; 2. Life Insurance, 37 C. J., Section 350; 3. Life Insurance, 37 C. J., Section 350; 4. Life Insurance, 37 C. J., Section 350; 5. Equity, 21 C. J., Section 191; 6. Equity, 21 C. J., Section 191; 7. Life Insurance, 37 C. J., Section 350.

---

FROM DAVIDSON.

---

Appeal from the Chancery Court of Davidson County. —Hon. John R. Aust, Chancellor.

Roberts & Roberts, for appellant.

R. B. C. Howell, B. A. Butler, and W. C. Davidson, for appellees.

Mr. Justice McKinney delivered the opinion of the Court.

Mrs. Cronbach, by her bill, sought a decree against the defendant company on eight policies of $5,000 each issued upon the life of her husband, Joseph Cronbach, upon the theory that, prior to his death, he had taken such action as to make her the sole beneficiary under said policies.

The chancellor dismissed her bill, and, upon appeal, his decree was affirmed by the court of appeals.

About a month before the death of the insured he had procured the company to change the beneficiary clauses in said policies so as to provide that the company should pay monthly interest on the principal, at the rate of three and six tenths per cent. per annum, to his wife and daughter for a period of twenty years, at which time other and different settlements were to be made.

On the night of February 18, 1924, the insured suddenly became violently ill, was carried to his home and a physician summoned. After consultation it was decided that an immediate surgical operation was necessary, and while the physician was arranging for an ambulance and hospital accommodations the insured talked

over his business affairs with his wife and a friend, and decided that, on account of recent financial reverses, and in order to secure an adequate support for his wife in case of his death, he would change said policies so as to make her sole beneficiary thereunder. He had his wife to procure his lock box from a closet, gave her the key to same, and she had taken the policies from said box and was looking for the beneficiary clauses when the insured was seized with such paroxysms of pain that he was unable to do more in effecting a change of beneficiary, was taken immediately to the hospital, operated upon, and died nine days later without ever having recovered sufficiently to transact any business.

It clearly appears that the defendant intended and desired to change the beneficiary clauses, as indicated, and would have done so in the regular way but for the fact that he was prevented by the circumstances detailed above.

The complainant contends that when the insured has done all that was reasonably in his power to do in order to comply with the rules of the company, but failed to do so, and dies before the change is formally made, a court of equity will treat the substitution as complete, on the principle that in equity that will be decreed done which ought to have been done.

The provision in the policies, with reference to a change of beneficiary, is as follows:

"The beneficiary may be changed as often as desired, and such change shall take effect on receipt at the home office of the company, before the sum insured or any installment thereof becomes due, of a written request, accompanied by the policy for indorsement."

For the company it is insisted that it had neither knowledge nor notice of any desire on the part of the insured to change the beneficiary; that it has not omitted to do anything that it should have done; that the insured did not comply with the provisions of the policies, and that the maxim invoked has no application in this cause. In other words, that the omission to effect a change of beneficiary is chargeable to the negligence and delay of the insured, and not to the company or other person.

Ordinarily, the terms of a written contract can only be changed by consent of the parties, or in accordance with some provision thereof authorizing a change upon specified terms and conditions. Here there was no such consent, and the provision as to change of beneficiary was only to become effective upon receipt, at the home office of the company, of a written request, accompanied by the policy for indorsement. It follows that a change of beneficiary in the policies here involved was not effected, unless some exception to the general rule can be applied.

The rules of law applicable to such cases and approved generally by the courts of this country are succinctly and accurately set forth in 37 Corpus Juris, section 350, p. 584, as follows:

"Policies authorizing a change of beneficiary usually specify the mode of effecting the change, as by filing a written notice or request, accompanied by the policy, at the home office of the company, and the indorsement of the change on the policy by the company. In order to effect a change of beneficiary the mode prescribed in the policy must be followed, it being held in some cases that a substantial compliance is necessary and in others that a strict compliance is required. A mere unexecuted in-

tention to change the beneficiary is not sufficient. The company has a right to insist upon compliance with the provisions of the policy, and while it may waive or be estopped to assert provisions intended for its benefit and protection, a waiver by it after the death of insured is ineffectual as against the original beneficiary. On the principle that equity regards as done that which ought to be done, the courts will give effect to the intention of insured by holding that the change of beneficiary has been accomplished where he has done all that he could to comply with the provisions of the policy, as where he sent a proper written notice or request to the home office of the company but was unable to send the policy by reason of circumstances beyond his control, as where it has been lost, or was in the possession of another person who refused to surrender it or was otherwise inaccessible, or where he sent both the policy and a proper written notice or request and all that remained to be done were certain formal and ministerial acts on the part of the company, such as the indorsement of the change of the policy, and these acts were either not done at all or were done after the death of insured. Of course the rule is not applicable where insured has not done all that he reasonably could to meet the conditions of the policy.''

Analyzing the foregoing text it will be noted that, in order to effectuate a change of beneficiary—

(1) The mode prescribed by the policy must be followed.

(2) In some jurisdictions a substantial compliance only is sufficient, while in others a strict compliance is required.

(3)   A mere unexecuted intention to change the beneficiary is not sufficient.

(4)   Where a substantial compliance is sufficient, that is, where a written request for change of beneficiary has been filed with the company, the intention of the insured will be given effect—(a) Where he was unable to send the policy because it had been lost; (b) or was in possession of another person who refused to surrender it; (c) or was otherwise inaccessible; (d) or where the notice and the policy were sent to the company, and all that remained to be done were certain formal and ministerial acts on the part of the company, and these acts were either not done at all or were done after the death of the insured.

It will be noted that, in the instant cause, there was no substantial compliance with the provisions of the policies in question, and the facts presented do not present a cause within either of the exceptions noted above. While the maxim "equity regards that as done which ought to be done," is regarded with favor, it can only be invoked when the party against whom complaint is made has failed or refused to perform some duty imposed upon him.

It cannot be invoked to create a right contrary to the agreement of the parties, or in disregard of essential conditions for which the parties have stipulated. 21 Corpus Juris, 201.

Here the insured had no right to demand of the company a change of beneficiary, because, as a condition precedent to such change, the parties had stipulated that the insured should file a written request with the company, which was not done.

To give the maxim invoked the construction contended for by the complainant would result in the destruction of the change of beneficiary clause of the policy, and would produce a fertile field in which to prosecute fraudulent claims. We have found no authority supporting that insistence, but, on the other hand, find the unanimity of authority to be just the contrary, as appears from the following cases: *McLaughlin* v. *McLaughlin,* 104 Cal., 171, 37 P., 865, 43 Am. St. Rep., 83; *Courtois* v. *Grand Lodge, etc.,* 135 Cal., 552, 67 P., 970, 87 Am. St. Rep., 137; *Rollins* v. *McHatton,* 16 Colo., 203, 27 P., 254, 25 Am. St. Rep., 260, and note; *Johnson* v. *New York Life Ins. Co.,* 56 Colo., 178, 138 P., 414, L. R. A., 1916A, 868; *Ellis* v. *Fidelity, etc., Co. of New York,* 163 Iowa, 713, 144 N. W., 574, L. R. A., 1915A, 109; *Ancient Order of Gleaners* v. *Bury,* 165 Mich., 1, 130 N. W., 191, 34 L. R. A. (N. S.), 277; *Knights of Maccabees of World* v. *Sackett,* 34 Mont., 357, 86 P., 423, 115 Am. St. Rep., 532; *Thomas* v. *Thomas,* 131 N. Y., 205, 30 N. E., 61, 27 Am. St. Rep., 582; *Schoenholz* v. *New York Life Ins. Co.,* 234 N. Y., 24, 136 N. E., 227 (affirmed, 197 App. Div., 91, 188 N. Y. S., 596); *Independent Order of Foresters* v. *Keliher,* 36 Or., 501, 59 P., 324, 1109, 60 P., 563, 78 Am. St. Rep., 785; *Deal* v. *Deal,* 87 S. C., 395, 69 S. E., 886, Ann. Cas., 1912B, 1142, and note; *Freund* v. *Freund,* 218 Ill., 189, 75 N. E., 925, 109 Am. St. Rep., 283; *Indiana Nat. Life Ins. Co.* v. *McGinnis,* 180 Ind., 9, 101 N. E., 289, 45 L. R. A. (N. S.), 192; *Garner* v. *Bemis,* 81 Fla., 60, 87 So., 426; *Chance* v. *Simpkins,* 146 Ga., 519, 91 S. E., 773; *Douglass* v. *Equitable L. Assur. Soc.,* 150 La., 519, 90 So., 834; *Metropolitan L. Ins. Co.* v. *Tesauro,* 94 N. J. Eq., 637, 120 A., 918; *National Life*

*Ins. Co. of United States* v. *Braŭtigam,* 163 Wis., 270, 154 N. W., 839, 157 N. W., 782.

The decisions are generally based upon the same reason given in *Ancient Order of Gleaners* v. *Bury,* supra, as follows:

"The following has been stated as the law:

" 'When a mutual benefit society has, under the powers and within the limits of its charter, provided in its by-laws a particular method of changing a beneficiary, or has set forth in its certificate a way by which the change may be made, no change of beneficiary may be made in any other mode or manner. The reason for this rule is not difficult to discover. It is based upon the familiar maxim that the expression of one thing excludes other and different things. When a society frames a set of rules providing for a distribution of a fund, and for the rights of beneficiaries and members, it must be. assumed that it excludes every other mode and manner. Any other conclusion would lead to the most interminable confusion in the law applicable· to the distribution of insurance money, and fritter away, in the expenses of uncertain litigation, funds created for the benefit of. widows, orphans, and heirs. But there is still another reason. It cannot be said that a beneficiary named in a certificate has no rights therein because he has no vested rights. The beneficiary has a right to the proceeds of the certificate of insurance, subject to the right of the member to change the beneficiary according to the terms of the by-laws and regulations of the society, which are a part of the contract of insurance; and the right of the beneficiary to have this contract carried out in the manner provided for is as binding upon the member as his

right to change the beneficiary is binding upon the bene-ficiary and the society.' Niblack on Insurance, pp. 415, 416.

"The case of *Fink* v. *Fink,* 171 N. Y., 616, 64 N. E., 506, would seem to be quite in point. We quote from the opinion:

" 'The change of the beneficiary is an important mat-ter, for it transfers the right to receive the death bene-fit, amounting in this case to $1,000, from one person to another. The right of the member to make the change is absolute and the beneficiary can neither prevent it by objecting, nor promote it by consenting. Obviously such a transaction requires some formalities for the protec-tion of the company, the member, and the beneficiary. The formalities required by the association before us, through its by-laws, were very simple, but unless they were substantially complied with, the change could not be made. Mere intention to make a change is not enough, for the acts prescribed to carry the intention into effect are forms imposed upon the execution of a power, and they must be observed or the change cannot be effected. As a condition precedent to effectuate the change, the member was required to ask the association for a new certificate and to pay it the fee exacted by the by-laws. The association could not make the change unless he re-quested it, and even then, as it stipulated in its contract with him, ''only on the payment of twenty-five cents.'' While it could have waived payment during his life, it did not do so and it could waive nothing after his death, for by that event the rights of the beneficiary became fixed and unalterable.'

"It is unfortunate that Mr. Bury did not enter upon his undertaking earlier, but we cannot make a different contract for him and the complainant than the one which they made for themselves."

Writ denied.