## MRS. RUTH PAGE v. DETROIT LIFE INSURANCE COMPANY et al.

Middle Section. November 23, 1929.

Petition for Certiorari denied by Supreme Court, May 30, 1930.

418

P. E. Cox, of Franklin, for appellant.
Wirt Courtney, of Franklin, for appellee.

FAW, P. J.   James H. Page died in Williamson County, Tennessee, on July 2, 1927, and this record presents a controversy as to whether his widow, Mrs. Ruth Page, or his mother, Mrs. G. H. Page, is the rightful owner of the proceeds of a policy of insurance on the life of said James H. Page, which policy was issued on May 29, 1923, by the Detroit Life Insurance Company, a corporation with its Home Office in the City of Detroit, State of Michigan, in which City and

State the insured was residing at the time of the issuance of the policy.

Shortly after the death of the insured, both Mrs. Ruth Page and Mrs. G. H. Page furnished to the insurer proofs of death and demanded payment of the amount of the policy, but the insurer, although admitting its liability on the policy, refused to pay either of the contending claimants because of the controversy between them as to which had the superior right to the proceeds of the policy.

Thereupon, Mrs. Ruth Page filed the original bill in this case, against the Detroit Life Insurance Company and Mrs. G. H. Page as defendants, alleging that she (the complainant) was the beneficiary named in the policy when issued; that "there had been no change of the beneficiary as required by the terms of the policy or as required by law," and that, at the date of the death of the insured, complainant was "the sole and legal beneficiary under said policy."

It was stated in complainant's bill that prior to his death the insured had assigned and delivered the policy in question to the insurer, Detroit Life Insurance Company, as security for a loan made by the company to the insured; that the loan had not been paid, and that the company still had the policy in its possession. Complainant filed a photostatic copy of the policy as an exhibit to her bill.

It was further alleged in the bill that defendant Mrs. G. H. Page was "undertaking to set up some sort of claim or right to the proceeds of said policy," but that she "had no right or semblance of right or interest whatever in said policy or the proceeds thereof."

Complainant prayed for a judgment against defendant Detroit Life Insurance Company for the sum stipulated in said policy (which was $1000), with interest, less any amount that may be owing said Insurance Company by reason of the aforesaid loan to the insured.

Defendant Detroit Life Insurance Company answered the bill and admitted that it was liable to the beneficiary for the amount of the policy in controversy, less an "automatic premium loan" of $29.14 which it had made to the insured in his lifetime, but the defendant Insurance Company asserted that, by reason of facts stated in its answer (which will appear later in this opinion) it was unable to determine whether the complainant Mrs. Ruth Page or the defendant Mrs. G. H. Page was the lawful beneficiary of the policy at the time of the death of the insured. The Insurance Company thereupon prayed that it be permitted to file its answer as a bill of interpleader and to pay into court the sum due from it on the policy in suit; that the policy be canceled and the insurer be relieved from further liability thereon.

Upon the aforesaid answer of the defendant Insurance Company, the Chancellor, with the consent of all parties to the cause, ordered that the defendant Detroit Life Insurance Company be permitted to

pay into the registry of the court the sum of $964.43, and that, upon such payment the defendant Insurance Company would be released and relieved from further liability to any and all the parties to this suit on account of the issuance of said policy.

Pursuant to said order, the Insurance Company paid the aforesaid sum of $964.43 to the Clerk and Master of the Chancery Court, and the subsequent litigation in this cause has been between the complainant Mrs. Ruth Page and the defendant Mrs. G. H. Page; hence when reference is hereinafter made to the defendant, Mrs. G. H. Page is intended, unless otherwise indicated.

Mrs. G. H. Page answered the complainant's bill and admitted that when the policy in question was originally issued the complainant was named therein as the beneficiary, but defendant alleged that, prior to his death, the insured (in the exercise of a right reserved to him in the insurance contract) changed the beneficiary, with the consent of the insurer, and thereby substituted the defendant as beneficiary, and that defendant was the lawful beneficiary of said policy at the time of the death of the insured, and is now entitled to the proceeds thereof.

Defendant, in expressed terms, pleaded certain provisions of the policy contract relating to a change of beneficiary, which provisions will be more particularly mentioned later in this opinion.

Defendant admitted that the insured, before his death, procured a loan from the Insurance Company, but denied "that the policy was in any sense assigned to said Company."

Defendant filed her answer as a cross-bill, praying that she have a decree directing that the proceeds of the policy in controversy be paid over to her.

The complainant, as cross-defendant, answered the cross-bill of defendant Mrs. G. H. Page, and, in her answer, reaffirmed the allegations and denials of her original bill, and insisted that no change of beneficiary was made prior to the death of the insured, "either as required by the law or as required by the contract of insurance, evidenced by the policy."

The cause was heard by the Chancellor, and thereafter his decree was entered as follows:

"This cause came on to be heard before the Honorable J. C. Hobbs, Chancellor, etc., upon the original bill, the interpleader by defendant, Detroit Life Insurance Company, the answer and cross-bill of Mrs. G. H. Page, the exhibits and the oral testimony introduced at the hearing.

"From a consideration of all of which it appears to the court that the insured, James H. Page, prior to his death, wrote said Detroit Life Insurance Company as follows, said letter being by said Company attached to his policy of insurance:

" 'Franklin Tenn June 1, 1927

" 'Detroit Life Insurance Company

" 'i am riting you in regards to my insurance i am not in Mich any more so i want it change from Mrs. J. H. Page for we are not living together any more that is why i want it changed she left me—i want it change at once and i will rite you as soon as i get settled i want it change to Mrs. G. H. Page my mother Franklin Tennessee R #9.

" 'i will be here for a while.

" 'Yours truly,

" ' (Signed)  J. H. Page.'

"And that in response thereto said Company replied as follows:

" 'Detroit, Mich., June 5, 1927.

" 'Mr. J. H. Page,

" 'Franklin, Tennessee.

" 'Policy #50442—May 29th.

" 'Dear Mr. Page:

" 'We are in receipt of your letter in regard to changing the beneficiary on the above policy, and we have been trying to locate your record card in the office, as it has undoubtedly been misplaced.  We will, however, take care of your request immediately upon finding this record and will communicate with you.

" 'Yours truly,

" ' (Signed) L. W. Bennette,

" 'Policy Loan Department.'

"And it appearing to the court that such action served to change and did change said policy so that Mrs. G. H. Page became the beneficiary thereunder, it is so ordered, adjudged and decreed by the court.

"The Clerk and Master is directed to pay over to the said Mrs. G. H. Page or her solicitor of record the sum of $964.43, being the proceeds of said policy of insurance heretofore paid into court, and the Master will likewise pay her any interest that has been earned thereon since said fund has been in court.

"Complainant, Mrs. Ruth Page, will pay the costs of this cause, for which execution may issue.

"To which action of the court, complainant excepts, and from such decree and all former decrees made in this cause, Mrs. Ruth Page prays an appeal to the Court of Appeals at Nashville, Tennessee; and the said Mrs. Ruth Page having tendered a sufficient appeal bond, said bond is filed, and the said Mrs. Ruth Page is granted an appeal."

The findings and adjudication of the Chancellor, as set forth in the above quoted decree, are challenged by the complainant's third and fourth assignments of error.  The third assignment is that

"The Chancellor erred in determining there had been a legal change of the beneficiary, for the reason that, under the law in Tennessee, and under the law in practically all the States, upon issuance of the policy of insurance naming the wife of the insured as the beneficiary, her interest in the policy is a vested one and the wife cannot be deprived of the benefit thereof by a change of the beneficiary without her consent."

And the fourth assignment is that

"The Chancellor erred in determining there was a legal change of the beneficiary either under the laws of Tennessee, or under the terms of the contract evidenced by the policy, which policy, under the laws of Tennessee, contains the entire contract for insurance between the parties."

It appears from the record that the policy in suit was issued by the Detroit Life Insurance Company pursuant to a written application signed by James H. Page on May 29, 1923, in and by which the applicant requested that "Ruth Page, wife" of the applicant, be made the beneficiary of the insurance thereby applied for, which designation of the beneficiary was, however, coupled with an expressed reservation of "the right of revocation."

The policy was, by the insured, delivered into the possession of the insurer, Detroit Life Insurance Company, on February 23, 1926, as shown by a receipt introduced into the record by the complainant, which receipt reads as follows:

"Detroit Life Insurance Company,
"Detroit, Michigan, Feb. 23, 1926.
"Received of James H. Page Policy #50442 as collateral for loan        Dollars.
"Detroit Life Insurance Company,
"Per Leslie B. Eby."

The policy remained in the possession of the insurer from the date of its delivery as aforesaid until the death of the insured and the institution of this suit. This seems to be conceded by both complainant and defendant; and likewise it seems to be conceded that the indebtedness of the insured to the Insurance Company was $29.14, with interest, as stated in the answer of the Company. So far as appears, the original policy was not before the Chancellor, and has never been made a part of the record, but the complainant filed a photostatic copy thereof as an exhibit to her bill, and the policy, as thus appearing in the record (and this is the only copy in the record), bears no assignment to the Insurance Company or to anyone else, and there is no evidence in the record that there was at any time a written assignment of the policy by the insured and the beneficiary, or either, to the Insurance Company.

It is stated in the answer of the Insurance Company that the indebtedness of the insured to the Company was for "an automatic

premium loan that became effective according to the terms of the policy for the reason that the insured failed to pay his premiums." The aforesaid application of James H. Page for the insurance in question contains, among other things, the following:

"I request that in event of default in payment of premiums, the insurance be continued in accordance with terms of the Automatic Premium Loan provision in the policy."

The policy contains an "Automatic Premium Loan Privilege," as follows:

"Provided that there be no assignment of this policy at the time, this policy shall not lapse or become forfeited by reason of the non-payment of the premium within the month of grace allowed herein, provided the cash surrender value of the policy and of any dividend additions thereon less any indebtedness on or secured by this policy is equal to or greater than the premium then due and unpaid. In such event the Company will credit the premium then due as paid, and the amount of such premium (with interest as hereinafter provided) shall become a first lien upon the policy in the Company's favor. If the net available cash surrender value be less than the premium that is due, the Company will continue this insurance in force for a period which bears the same ratio to the full premium period then ensuing as such net value bears to the premium then due, and if prior to the expiration of such reduced period the last due premium be not paid in full, all liability of the Company on this policy shall thereupon terminate subject to notice as hereinafter provided. While this policy is thus continued in force the payment of premium may be resumed without medical examination and the accumulated loans may be paid off or allowed to stand as a lien against the policy. These automatic premium loans shall bear interest at the rate of six per cent per year from the dates when the respective premiums loaned become due and, if unpaid, the interest shall be compounded yearly in advance at the beginning of each policy year. The Automatic Premium Loan Privilege is granted at the request of the insured made in the written application for this insurance, but the request for this privilege may be revoked at any time upon written notice to the Company at its Home Office."

It is seen that an assignment of the policy was not required, as an incident of an "automatic premium loan," and, as the receipt of February 23, 1926, introduced by complainant, shows merely that the insured delivered the policy to the Company "as collateral" for a loan of an unnamed amount, the reasonable inference from the whole record is that the delivery of the policy to the Insurance

Company was in the nature of a pledge, and without a written assignment.

(A life insurance policy may be the subject of a pledge. Joyce on Insurance (2 Ed.), Vol. 2, sec. 811, and Vol. 4, sec. 2324; Merrill v. New England Mutual Life Insurance Company, 103 Mass., 245, 4 Am. R. 548, 552, 554.)

It may be reasonably supposed that the Company would, when making an "automatic premium loan," demand the possession of the policy in order to more effectively safeguard its contract "lien," but an assignment of the policy to the Company was unnecessary, under the circumstances, for the reason that, by the terms of the policy contract above quoted, the Company had a "first lien" upon the policy for the security of the "automatic premium loan" made to the insured.

The relevancy of the fact of the absence of a formal assignment of the policy to the issues in this case will more fully appear when we come to the consideration of the requirements of the policy with respect to a change of the beneficiary.

The record shows, without controversy, that the insured wrote and mailed to the Insurance Company the letter of June 1, 1927, copied into the Chancellor's decree, and that, in reply thereto, the Company wrote and mailed to the insured the letter of June 5, 1927, also copied into the Chancellor's decree, supra.

Moreover, it is obvious that the insured wrote and mailed the letter of June 1, 1927, with the intention and purpose of changing the beneficiary in the policy in question by substituting defendant Mrs. G. H. Page for the complainant Mrs. Ruth Page, as the beneficiary. That such was the desire, intention and purpose of the insured is not questioned by the appellant; but it is insisted, for appellant, that she had a vested interest in the policy, of which she could not be deprived without her consent.

It is true that "in an ordinary life policy, where the beneficiary is some other than the assured, and no control over the policy is reserved to him by its terms, then the law is that the interest of the beneficiary vests at the time the contract of insurance is complete, and cannot be affected by subsequent acts or declarations of the assured." Life Association v. Winn, 96 Tenn., 224, 226, 33 S. W., 1045. See also 2 Joyce on Insurance (2 Ed.), sec. 730.

But where a right to change the beneficiary has been reserved to the insured by the terms of the insurance contract, the beneficiary named in the policy has a mere expectancy, depending upon the will and act of the insured, and has no vested right or interest during the lifetime of the insured. Life Association v. Winn, supra; Sofge v. Supreme Lodge, etc., 98 Tenn., 446, 452, 39 S. W., 853; Simms v. Randall, 117 Tenn., 543, 547, 96 S. W., 971; Davis

v. Davis, 136 Tenn., 520, 526, 190 S. W., 459; 37 C. J., p. 579, sec. 345; 2 Joyce on Insurance (2 Ed.), sec. 740.

The policy here involved contains a provision as follows:

"Change of Beneficiary—Provided the right to change the beneficiary is reserved and this policy is not assigned, the Insured, if of lawful age, may change any beneficiary at any time while this policy is in force, to take effect only when such change is endorsed hereon at the Home Office with the written consent of the Company. If no beneficiary shall survive the insured, the proceeds of this policy shall be paid to the executors, administrators, or assigns of the insured, unless otherwise provided in or by endorsement on this policy."

The policy also contains a provision in these words:

"Policy Contract—This policy and the application therefor, a copy of which is hereto attached and made a part hereof, constitute the entire contract. All statements made by the insured shall in the absence of fraud be deemed representations and not warranties, and no such statement shall avoid this policy unless it is contained in the written application."

As we have heretofore stated, the insured, in his written application, requested that his wife, Ruth Page (the complainant) be named as the beneficiary of the policy for which he was then applying, but he therein reserved "the right of revocation," which, in the connection used, could mean nothing more nor less than the reservation of the right to change the beneficiary of the policy.

It is insisted, on behalf of appellant, that the aforesaid "application" is not a part of the insurance contract involved in this case, and, therefore, it does not appear that the right to change the beneficiary was reserved by the insured. It is sought to predicate the contention just stated on the Act of 1907, ch. 441 (Shannon's New Code, sec. 3275a1), which provides that:

"Every policy of insurance, issued to or for the benefit of any citizen or resident of this State on or after the first day of July, 1907, by any insurance company or association doing business in this State, except fraternal beneficiary associations and mutual insurance companies or associations operating on the assessment plan, shall contain the entire contract of insurance between the parties to said contract, and every such contract so issued shall be held as made in this State and construed solely according to the laws of this State."

There is, in the record, no affirmative evidence, nor any fact or circumstance from which it may be inferred. that the Detroit Life Insurance Company was "doing business in this State" at the time of the issuance of the policy in suit, and the insured, James H. Page, was at that time a resident, and presumably a citizen, of

the State of Michigan. The Tennessee statute above quoted, therefore, could not have any direct application to the facts of this case. It is only by entertaining the presumption (in the absence of proof on the subject) that the laws of the State of Michigan are the same as the laws of Tennessee, that the rule embodied in the quoted statute may be invoked in the instant case.

Assuming arguendo (without so deciding) that the laws of the State of Michigan were, at the time the policy in question was issued, the same as the laws of the State of Tennessee, we are of the opinion that the application was a part of the "policy contract," or "contract of insurance," for the reason that it was made so by the terms of the policy introduced into the record by the complainant below. The complainant filed a photostatic copy of the policy, without the application, as an exhibit to her original bill, and the defendant introduced in evidence at the trial, and was permitted, without objection, to file, a photostatic copy of the application to which we have heretofore referred. The originals of the policy and the application were not put in evidence, but, presumably, remained in the possession of the Detroit Life Insurance Company; and we are of the opinion that, in view of the provisions of the policy so reciting (which we have heretofore quoted), and the total absence of evidence to the contrary, it must be found that a copy of the application was attached to the policy, and that the policy and the application therefor constituted the contract of insurance between the parties. It follows that, by the terms of the contract of insurance, the insured, James H. Page, reserved the right to change the beneficiary.

It is further contended, for appellant, that, if the application can be treated as a part of the insurance contract, the statement therein by the insured of his reservation of the right to change the beneficiary was ineffective and void in law, for the reason that the beneficiary named was the wife of the insured, and it is provided by section 4030 of Shannon's Code that: "A life insurance effected by a husband on his own life shall inure to the benefit of the widow and next of kin, to be distributed as personal property, free from the claims of his creditors."

For support of the contention just stated, appellant's counsel cites Rison v. Wilkerson, 3 Sneed, 565; Gosling v. Caldwell, 1 Lea, 454; Trust Co. v. Bank, 123 Tenn., 617, and Marquet v. Insurance Co., 128 Tenn., 213, and insists that these cases establish the rule that "when the wife is made the beneficiary her interest at once becomes vested, and by virtue of the statute, as distinguished from any contract agreement, the wife cannot be deprived by any act of the assured of the benefit of the insurance."

We do not find in the cases thus cited by counsel, any support for the proposition that where a wife is named as the beneficiary of a policy of insurance on the life of her husband, she takes a vested interest therein by virtue of the statute (Shan. Code, sec. 4030, supra). The rule we deduce from the above mentioned cases cited by counsel is that section 4030, supra, applies only to life insurance payable to the executors, administrators or assigns of the insured, or, in common parlance, to the estate of the insured, and has no application to a policy of insurance payable to a named beneficiary, whether such named beneficiary be the wife of the insured or any other person having an insurable interest in the life of the insured. And, as held by authorities hereinbefore cited, including our own Supreme Court, whether such named beneficiary takes a vested interest or a mere expectancy depends upon the terms of the contract between the insured and insurer, that is, whether the right to change the beneficiary is thereby reserved to the insured. In this connection, the opinion of the Court of Appeals of Kentucky in the case of Hopkins v. Hopkins, 17 S. W., 864, is illuminating.

It is also insisted for appellant that the attempted change of beneficiary was ineffective, for the further reason that, at the time the insured requested that his mother be substituted for his wife as the beneficiary, the policy had been assigned to the Insurance Company, and that one of the conditions of the right of the insured to change the beneficiary is that "the policy is not assigned."

The insertion of the condition just mentioned was manifestly for the benefit of the Insurance Company. An absolute and unconditional assignment of the policy by the insured (the beneficiary joining) would vest the beneficial interest in the assignee (37 C. J., 435, sec. 146), and, in this situation, of course, any effort of the insured and insurer to change the beneficiary would be futile.

As we have heretofore pointed out, we think the reasonable inference from the record is that there had been no formal written assignment of the policy to the Company, but merely a deposit of the policy, in the nature of a pledge, which did not divest the assignor of his general property in the policy (37 C. J., p. 428, sec. 134), but invested the Company with the right to possession of the policy until the object of the pledge was accomplished. Trust Co. v. Bank, 123 Tenn., 617, 626, 134 S. W., 311.

But, whatever may have been the form and manner of the transfer of the policy to the Company, it is clear that the Company acquired no interest in the policy by the transfer except as collateral security for the "automatic premium loan," and, the provision against assignment, being inserted for the protection of the Com-

pany, could be, and we think it was, waived by the Company. Insurance Co. v. McCrea, 8 Lea, 513, 521-528. Of this the complainant cannot complain, as the provision in question was not, in any sense, designed for her protection. Supreme Conclave, etc., v. Cappella, 41 Fed. R., 1, 4.

It is further insisted for appellant that the attempted change of beneficiary was not effective, because no change of beneficiary was endorsed on the policy, and that, by the terms of the policy, such change could "take effect" only when endorsed on the policy at the Home Office, with the written consent of the Company.

In the cases of Cronbach v. Aetna Life Insurance Co., 153 Tenn., 362, 284 S. W., 72, and Holmes v. The Metropolitan Life Insurance Co., 3 Tenn. App. R., 80, it was held that there had been no change of beneficiary, notwithstanding the evident desire of the insured to effect such change, for the reason that it not only appeared that there had been no compliance with the conditions prescribed by the policy as a prerequisite to a change of beneficiary, but it also appeared that the insured had not done all that he reasonably could to comply with such conditions of the policy.

But, in the Cronbach case, supra (at pages 366-367), the Court, speaking through Mr. Justice McKinney, approved, as an accurate statement of the law, an excerpt from the text of 37 C. J., p. 584, section 350, as follows:

"Policies authorizing a change of beneficiary usually specify the mode of effecting the change, as by filing a written notice or request, accompanied by the policy, at the home office of the company, and the indorsement of the change on the policy by the company. In order to effect a change of beneficiary the mode prescribed in the policy must be followed, it being held in some cases that a substantial compliance is necessary and in others that a strict compliance is required. A mere unexecuted intention to change the beneficiary is not sufficient. The company has a right to insist upon compliance with the provisions of the policy, and while it may waive or be estopped to assert provisions intended for its benefit and protection, a waiver by it after the death of insured is ineffectual as against the original beneficiary. On the principle that equity regards as done that which ought to be done, the courts will give effect to the intention of insured by holding that the change of beneficiary has been accomplished where he has done all that he could to comply with the provisions of the policy, as where he sent a proper written notice or request to the home office of the company but was unable to send the policy by reason of circumstances beyond his control, as where it has been lost, or was in the possession of another person

who refused to surrender it or was otherwise inaccessible, or where he sent both the policy and a proper written notice or request and all that remained to be done were certain formal and ministerial acts on the part of the company, such as the indorsement of the change of the policy, and these acts were either not done at all or were done after the death of insured. Of course the rule is not applicable where insured has not done all that he reasonably could to meet the conditions of the policy.''

In the instant case, it seems obvious that the insured did everything that he could, under the circumstances, to effect the change of beneficiary which he desired, when he wrote and mailed to the Company the letter of June 1, 1927. The policy was in the Company's possession, in its home office, and all that remained to be done in order to effect the requested change was for the Company to make an appropriate endorsement on the policy. We construe the Company's letter of June 5, 1927, as indicating its willingness and consent to the change, and the only reason offered by the Company for delay was that some of its office records had ''been misplaced.''

We are of the opinion that this is a case for the application of the maxim that ''equity regards as done that which ought to be done;'' and appellant's third and fourth assignments of error are overruled. In the disposition of the assignments of error we have not followed the order in which they are assigned. Recurring now to the first assignment, it is that ''the Chancellor erred in reaching the conclusion, from the testimony introduced, that appellant, Mrs. Ruth Page, wife of the deceased, abandoned her husband or that they had separated, all of the evidence showing, beyond any sort of question, that such was not the facts.''

The Chancellor made no finding, one way or the other, with respect to the question of fact stated in the first assignment, supra, and it was not necessary that he should do so, for such finding would have had no controlling effect on the result in this case. It is clear from the record that the relations of complainant and her husband were not harmonious and agreeable about the time the letter of June 1, 1927, was written, but, as there can be no doubt on the record that the insured desired and intended to effect a change of the beneficiary of the policy in question, it is not material to ascertain the motives which prompted him. Sofge v. Supreme Lodge, etc., supra, page 453. The first assignment of error is overruled.

The second assignment is that ''the Chancellor erred in finding that the insured, James H. Page, evidenced an intention to change the beneficiary, in that, the Insurance Company, in its pleadings

states that it received a letter from the insured, dated July 1, 1927. Trans., page 9. While the witness, Mrs. Horn, states that on the first day of July, 1927, the day before James H. Page died, she was with him and that he was not able to write any letters and that he did not write any letter or letters on the first day of July, 1927. Trans., page 40.''

In its answer to complainant's bill, the Insurance Company stated that, subsequent to its receipt of the letter of June 1, 1927, it had received another letter from the insured, which it copied into its answer, as follows:

"Franklin, Tennessee, July 1, 1927,—Detroit Life Insurance Company, Detroit, Michigan. Gentlemen:—Replying to your favor of June 15, 1927, in regard to changing the beneficiary on my policy #50442, from my wife, to my mother, I have not as yet received the papers on same, and would thank you to get them to me at the earliest possible moment. Thanking you in advance for this favor and trusting to hear from you by return mail, I remain, Yours truly, Jas. H. Page.''

The Chancellor made no finding with respect to the letter last above quoted. The authenticity of this letter is not material to the issues in this case. If it was written by or at the request of the insured, it was merely a reaffirmation of the desire and intention expressed in his letter of June 1, 1927. If it was not written by or at the instance of the insured, it could have no bearing on the issues, for there is no suggestion in the record that the insured at any time indicated a desire or purpose to withdraw the request made of the Company in his letter of June 1, 1927. The second assignment of error is overruled. This disposes of all the assignments of error.

It results that the Chancellor's decree is affirmed and a decree will be entered accordingly. It appearing that the fund in controversy in the case has been loaned out, the cause will be remanded to the Chancery Court of Williamson County in order that it may be collected and disbursed under the orders and decrees of that court. The costs of the appeal will be adjudged against the appellant Mrs. Ruth Page and the sureties on her appeal bond.

Crownover and DeWitt, JJ., concur.