# MRS. ETTA R. GROSSMAN v. PRUDENTIAL INSURANCE COMPANY OF AMERICA. —325 S. W. (2d) 811.

Middle Section. February 27, 1959.

Certiorari denied by Supreme Court June 5, 1959.

E. J. Walsh, Nashville, for complainant.

Trabue, Sturdivant & Harbison, Nashville, for defendant.

I

SHRIVER, J. Complainant, Mrs. Etta Grossman, brought suit in the Chancery Court at Nashville against the Prudential Life Insurance Company of America to recover in a lump sum the proceeds of a policy of insurance issued on the life of her husband, Henry Grossman, who died on September 24, 1955.

The policy in question was issued by the defendant on June 27, 1942 as a paid-up policy in the face amount of $2,555 payable on the death of Henry Grossman to his executors or administrators, but the right to change the beneficiary was reserved.

Subsequent to its issuance there were four separate indorsements designating the beneficiary and directing the method of payment of the proceeds of the policy. The first of these indorsements was dated October 2, 1942, directing that the proceeds be paid to Etta R. Grossman for life with fifteen years certain, the installments remaining unpaid at her death to be paid in a lump sum to the insured's children. The second indorsement, dated February 25, 1943, directed that the proceeds be paid to Etta R. Grossman for life with twenty years certain, the installments remaining unpaid at her death to be paid in monthly installments to the insured's children. The third indorsement, dated July 13, 1953, directed that the proceeds be paid to Etta R. Grossman for life with twenty years certain, with the power of appointment in favor of the wife, and providing that if the power be not exercised by her, the installments remaining unpaid at her death would be paid in a lump sum to the insured's children. The fourth and last indorsement was dated December 16, 1954, and it directed that the proceeds be paid to Etta R. Grossman for life with twenty years certain, the installments remaining unpaid at her death to be paid in a lump sum to the insured's children.

There is attached to said policy another indorsement or rider dated December 16, 1954, (the same date as the last above mentioned indorsement with respect to the beneficiary), which said rider contains the following provision:

"The policy is hereby amended to provide that, subject to such limitations as may be hereinafter set forth, all legal incidents of ownership and control of the Policy, including any and all benefits, values, rights, options and privileges conferred upon the

Insured by the Policy or allowed by the Company shall belong to the following Owner: Etta R. Grossman, wife of the Insured, the executors or administrators of said Etta R. Grossman.''

Based on the provisions of this indorsement or rider Mrs. Grossman first requested and then demanded that the Company pay the proceeds to her in a lump sum rather than in installments, as provided for in the last above indorsement with respect to beneficiaries.

As stated hereinabove, the insured, Henry Grossman, died on September 24, 1955, and the defendant Company offered to pay the proceeds of the policy here in question, as well as the proceeds of four other policies, in monthly installments during the life of the complainant and for twenty years certain. These installments under the five policies are shown to amount to $145.57 per month. The total face value of the four policies is $25,628.38.

Complainant refused to accept the payments in installments, and on September 18, 1956, filed this suit to recover the proceeds in a lump sum.

On February 13, 1957 the children of the insured, all of whom are sui juris signed a letter waiving any interest they might have in the proceeds of the policies and assigning such interest to their mother, the complainant, thus, making her the sole beneficiary under the terms of all the policies of all the proceeds if paid according to her demand.

On December 1, 1958 the case was tried before Chancellor Alfred T. Adams, when a decree was entered denying the relief sought and dismissing the bill at complainant's cost. Thereupon, an appeal was prayed and perfected to this Court.

## II

### Assignments of Error

There are five assignments of error which, in the aggregate, assert that the Chancellor erred in dismissing complainant's suit and in refusing to enter a decree directing the defendant to pay the proceeds of the insurance policy to complainant in a lump sum; and that it was error for the Chancellor to hold that the monthly installment indorsement of December 16, 1954 was placed on the policy prior to the indorsement dated the same day, transferring ownership and control thereof to the complainant.

## III

 The complainant insists:

"1. That the Amendment transferring all incidents of Ownership to Mrs. Grossman gave her the title and ownership of the policy, and that upon the death of her husband she was entitled to have the proceeds paid to her as the sole owner of the proceeds; that the title was vested in her and was complete without any qualification.

"2. That if the 'Transfer of Ownership' Rider was attached first, then the monthly installment Rider was void because Mrs. Grossman did not consent thereto.

"3. That if the Monthly Installment Rider was attached first, it was superseded by the Transfer of Ownership Rider as the policy itself provides that when a change of beneficiary is attached to the policy 'all rights of the former beneficiary or beneficiaries shall cease.'

"4. That the undisputed evidence (the physical arrangement of the Riders on the Policy and the numbers

of the Applications) shows that the 'Incidents of Ownership' Rider was attached first, and Mrs. Grossman has the right to ask for and receive the proceeds in cash.''

On the other hand, the contention of the defendant as set out in its answer, is as follows:

''The effect of the endorsement transferring ownership and control of said policies to the complainant was to substitute her in the place and stead of her husband, the insured, and to empower her to exercise any right which the insured had or could exercise. However, upon the death of the insured said policies matured, and the rights of the insured, and consequently of the complainant, to modify or alter said contract terminated.

''All rights under said policies became vested, and the defendant's *legal duty* and obligation thereunder can be discharged only by making payment in accordance with the terms of the contract.''

Complainant argues that transfer of ownership gave to the complainant the control of the policy and all benefits, values, privileges etc., allowed by the company and that this transfer, not being conditional when accepted by the Company, gave the complainant all the rights that the insured had in his life time.

She further argues that the physical facts establish that the company accepted and attached the transfer of ownership indorsement prior to the installment rider and, therefore, the insured had no power to add the installment indorsement. This is said to be true even though the installment rider and the transfer of ownership were dated the same day.

We do not regard this question as being particularly significant. Both riders, or indorsements, were applied for on the same day and were dated the same day, and the Chancellor concluded, probably correctly, that the beneficiary provision must be regarded as having taken effect prior to the transfer of ownership provision, otherwise, as is pointed out by him, the insured and insurer would seem to have done a useless and, perhaps, a senseless thing.

Counsel for complainant cites F. E. Fisher & Co. v. Phoenix Mut. Life Ins. Co., 15 Tenn. App. 502, as authority for his position in this case, but we think that case does not decide the precise question involved here, especially in view of the policy provisions and the language employed in the conservation agreement quoted in the opinion. It is stated therein that ''The conservation agreement did nothing more than change the mode of payment of the benefits under the policy, making them payable in installments instead of a lump sum upon the death of the insured.''

Counsel for defendant points out that if the last change of beneficiary indorsement were rendered inoperative, by holding that it was attached after the insured had parted with control of the policy, then the indorsement of July 13, 1953, which was the next preceding beneficiary indorsement, would take effect, in as much as, it was intended that the last beneficiary indorsement supersede the last prior one.

Counsel for defendant states the proposition that, once a policy of life insurance has matured by the death of the insured, all policy rights, other than the rights involving the proceeds, are terminated. This is true whether the

policy belongs to the insured or to another. The policy at that time becomes a debt payable to the beneficiaries in accordance with the policy provisions, and the rights of all beneficiaries become vested and fixed.

He points out that this principle is recognized by all of the text authorities. For example in Vance on Insurance, page 680, we find the following statement:

"Whatever may be the variant opinions and different descriptions of the beneficiary's interest during the lifetime of the insured, it is everywhere held that the insured's reserved power to extinguish the beneficiary's interest ceases at his death, and cannot be exercised by his personal representatives or assignees. The beneficiary's rights then become completely fixed."

In Couch on Insurance, Section 308, page 828, the following is said:

"And, although an insured has reserved the right to change the beneficiary, if he does not do so, either in fact or in legal effect, such right does not survive; rather, the rights of the named beneficiary vest at the instant of the insured's death, and cannot be affected by any subsequent act of the insurer."

See also 2 Appleman, Insurance, Section 921, page 330, as follows:

"It has already been pointed out that the beneficiary automatically acquires no vested rights in a contract prior to the death of the insured, whether such policy be one of old line insurance where the power to change the beneficiary is reserved, fraternal, or group insurance. Upon the death of the in-

sured, however, the expectancy or qualified right becomes vested and absolute in nature, provided there has been no change in beneficiary designation."

In Cronbach v. Aetna Life Insurance Company, 153 Tenn. 362, 284 S. W. 72, the court quoted with approval from Fink v. Fink, 171 N. Y. 616, 64 N. E. 506, as follows [153 Tenn. 362, 284 S. W. 74]:

"While it could have waived payment during his life, it did not do so and it could waive nothing after his death, for by that event the rights of the beneficiary became fixed and unalterable."

Again in Eblen v. Jordan, 161 Tenn. 509, 33 S. W. (2d) 65, 66, the Supreme Court of Tennessee, in an opinion by Mr. Justice Cook, stated the proposition thus:

"Ordinarily the rights of the parties, including beneficiaries, under a policy of insurance become vested upon death of the insured, and cannot be impaired by any act of the insurer." (Citing the Cronbach case.)

It is argued on behalf of complainant that the ownership indorsement revoked all the previous beneficiary indorsements. It is true that numerous authorities state the rule that an absolute assignment of a policy to a person other than the named beneficiary, has the effect of substituting the assignee, or donee, in the place of the former beneficiary; and a collateral assignment made to secure an indebtedness of the insured, likewise, vests in the assignee an interest in the proceeds which interest is superior to the rights of the beneficiary in an amount equal to the balance of the debt. But we think there is a

distinction between the assignment of a policy for debt, or as collateral to a loan, or similar purpose, and a transfer of ownership by amendment to the policy such as we have in the case at bar. An assignment is an agreement between the assignor and the assignee which may be, and often is, separate and apart from the insurance contract, and the insurance company is not necessarily a party to it.

On the other hand, a change of ownership indorsement, as in the case at bar, is an amendment to the policy in accordance with an agreement between the company and the insured. It is expressly limited in its application. As is pointed out by learned counsel for defendant, the effect of such an amendment is to alter or amend specific policy provisions, but it does not affect the other provisions in the contract of insurance.

It is pointed out that on the same day Mr. Grossman transferred the policy to his wife he also attached, or caused to be attached, the other rider providing for payments for the life of his wife with twenty years certain. Thus, it cannot be assumed that he intended that the proceeds be paid to her in a lump sum.

At the time of insured's death the contract provided for payment of the proceeds in monthly installments and, therefore, the company has the right to insist on paying according to those terms.

On the other hand, inasmuch as it is conceded that Mrs. Grossman, after the ownership of the policy was transferred to her, and before the insured's death, could have applied for and procured a change in the terms thereof so as to provide for a lump sum payment; and, inasmuch as all of the other possible beneficiaries under

this policy have joined with her in this application by assigning all their rights and interests to her, it would seem to us that the company would be fully justified in acceding to her request and in making a lump sum settlement rather than insisting as it does upon the strict terms of the beneficiary provision.

This is true because, in the case at bar, nearly a year before Mr. Grossman died he transferred ownership and control of this policy to Mrs. Grossman, thereby, putting it within her power to change the beneficiary provision if she saw fit to do so before the policy matured by his death.

Having these things in mind, we repeat that it seems to us that the company might very well make an exception in this case and pay Mrs. Grossman as she has requested.

On the other hand, we are not prepared to hold that we have the authority to order the company to pay in a lump sum contrary to the specific provisions of the policy.

It, therefore, follows that the decree of the Chancellor is affirmed.

Affirmed.

Felts and Hickerson, JJ., concur.