LILLIE PEARL BOLES, Complainant-Appellant, v. CHARLES W. CROOM. Defendant-Appellee.—400 S.W. (2d) 261.

Western Section. April 27, 1964.

Certiorari Denied by Supreme Court December 11, 1964.

Nell Sanders Aspero, Aspero & Aspero, Memphis, for appellant.

James H. Hicks, Memphis, for appellee.

CARNEY, J. The complainant, Lillie Pearl Boles, sought to recover, as substituted beneficiary, upon two contracts of life insurance, one in the amount of $6,000.00 and the other in the amount of $2,800.00, held by Jack G. Croom with the Aetna Life Insurance Company. The contracts were procured by Jack G. Croom as an employee of International Harvester Company at Memphis, Tennessee. The Chancellor ruled adversely to the complainant and in favor of the defendant, Charles Croom, a brother of Jack G. Croom, who was named as beneficiary in said two insurance contracts. Complainant has appealed and assigned error.

The only question before this court is whether or not the deceased, Jack G. Croom, in his lifetime, made a substantial compliance with the terms and provisions of the policies so as to effectively change the beneficiary of said two life insurance contracts from his brother, Charles Croom, to the complainant, Lillie Pearl Boles, his housekeeper. Jack Croom had been employed at International Harvester for about eighteen years. His wife died in 1952 and Jack Croom changed the beneficiary

under the two insurance policies to his brother, Charles Croom.

On September 9, 1961, Jack Croom wrote in longhand the following will:

"I will to my Aunt Minnie, Mrs. Minnie Crawford at 2349 Broad Avenue, my clock on the wall.

"I will to Lillie Boles, my housekeeper, my insurance at International Harvester Co. My house, and furni ture, and airconditioners. Miss Boles lives 721 North Dunlap and my '50 Model Ford."

Mr. Croom became seriously ill and on January 24, 1962, his leg was amputated. On February 1, 1962, while Jack Croom was still confined to the hospital, the complainant, Lillie Pearl Boles, who had been his housekeeper for many years after his wife's death, telephoned Mr. Jimmy Strickland who was in charge of employees' insurance at International Harvester and informed him that Jack Croom had "willed her his insurance at International Harvester." Mr. Strickland informed the complainant, Mrs. Boles, that he could not talk about such matters over the phone.

Apparently the complainant related the substance of this conversation to Jack Croom because on the same day, February 1, 1962, Jack Croom asked his close friend, Richard Huston, to telephone the insurance department of International Harvester and to ask the department to change the beneficiary on the two insurance policies from his brother, Charles Croom, to the complainant, Lillie Pearl Boles. Mr. Huston wrote out on a piece of paper the name Jimmy Strickland and International Harvester. Mr. Huston made the call on February 1 or February 2, but was unable to locate Mr. Strickland.

He was informed by other personnel in the insurance department at International Harvester that Mr. Croom would have to come by in person to make the application. Upon being informed that he was seriously ill in the Baptist Hospital in Memphis such person at International Harvester informed Mr. Huston that Mr. Croom would have to put his change of beneficiary in writing.

On Sunday, February 4, 1962, Mr. Huston visited Mr. Croom in the hospital and Mrs. Boles, the housekeeper, and her niece, Patricia Gayle Boles, age 12, were present. He explained to Mr. Croom that someone in the insurance office at International Harvester had informed him that Mr. Croom should put the order in writing. Mr. Croom then asked for the original slip of paper upon which Mr. Huston had already written, "EL 7-5311 Jimmy Strickland, International Harvester Company," and wrote the following in his own handwriting: "I will to Pearl Boles, my housekeeper, my insurance at International Harvester Company," and signed it "Jack G. Croom."

Mr. Croom then handed the piece of paper to Patricia Gayle Boles and asked her to read it aloud to the complainant, Pearl Boles. After this was done Jack Croom instructed Patricia to give the slip of paper to the complainant and he directed the complainant to put it in her pocketbook and if anything happened to him to take it to her lawyer, that "everything would be all right." So far as the record shows Jack Croom never mentioned insurance to anyone after that date. His condition worsened within a few days and he died on March 22, 1962.

On the same day that Jack Croom died the complainant had her solicitor notify the insurance department at International Harvester that she was claiming the benefits of the two policies as the new beneficiary. On the next

day a bill was filed by the complainant against Aetna Life Insurance Company enjoining the payment of the policies pending the perfection of complainant's claim. The defendant, Charles Croom, was made a party defendant. After several amended pleadings and motions, Aetna Insurance Company was permitted to pay the proceeds of the two policies into court and to be dismissed as a party defendant. The litigation continued with Charles Croom as defendant.

There is no suggestion of fraud or overreaching on the part of the complainant, Mrs. Boles. The provisions in the policies relating to change in beneficiary are as follows:

"The employee may change his designation of beneficiary as often as desired by written request filed at the headquarters of the employer or at the home office of the insurance company. Such change will take effect as of the date of execution of such request, whether or not the employee be living at the time of such filing but without prejudice to the insurance company on account of any payments made by it before receipt of such request at its home office."

The Chancellor was of opinion that even though Jack Croom took positive action in writing which evidenced his desire for a change of beneficiary, he did not do all that he reasonably could have done to meet the conditions of the policy and that he was required to mail or attempt to mail or send a written request for change of beneficiary to his employer or to the insurance company during his lifetime.

The Chancellor relied upon the cases of Cronbach v. Aetna Life Insurance Company, 153 Tenn. 362, 284 S.W.

72, and Barnes v. Prudential Insurance Company, ·28 Tenn. App. 109, 186 S.W.(2d) 918.

The opinion by Judge Hale in Barnes v. Prudential Insurance Company, quoted from the opinion of Judge McKinney in Cronbach v. Aetna Life Insurance Company as follows:

"Our Supreme Court in discussing policy provisions for change of beneficiary said:

" 'The rules of law applicable to such cases and approved generally by the courts of this country are succinctly and accurately set forth in 37 Corpus Juris, sec. 350, p. 584, as follows:

" ' "Policies authorizing a change of beneficiary usually specify the mode of effecting the change, as by filing a written notice or request, accompanied by the policy, at the home office of the company, and the indorsement of the change on the policy by the company. In order to effect a change of beneficiary the mode prescribed in the policy must be followed, it being held in some cases that a substantial compliance is necessary and in others that a strict compliance is required. A mere unexecuted intention to change, the beneficiary is not sufficient. The company has a right to insist upon compliance with the provisions of the policy, and while it may waive or be estopped to assert provisions intended for its benefit and protection, a waiver by it after the death of insured is ineffectual as against the original beneficiary. On the principle that equity regards as done that which ought to be done, the courts will give effect to the intention of insured by holding that the change of beneficiary has been accomplished where he has done all that he could to comply with the

provisions of the policy, as where he sent a proper written notice or request to the home office of the company but was unable to send the policy by reason of circumstances beyond his control, as where it has been lost, or was in the possession of another person who refused to surrender it or was otherwise inaccessible, or where he sent both the policy and a proper written notice or request and all that remained to be done were certain formal and ministerial acts on the part of the company, such as the indorsement of the change of the policy, and these acts were either not done at all or were done after the death of insured. Of course the rule is not applicable where insured has not done all that he reasonably could to meet the conditions of the policy.''

'' 'Analyzing the foregoing text it will be noted that, in order to effectuate a change of beneficiary—

'' '(1) The mode prescribed by the policy must be followed.

'' '(2) In some jurisdiction a substantial compliance only is sufficient, while in others a strict compliance is required.

'' '(3) A mere unexecuted intention to change the beneficiary is not sufficient.

'' '(4) Where a substantial compliance is sufficient, that is, where a written request for change of beneficiary has been filed with the company, the intention of the insured will be given effect—(a) Where he was unable to send the policy because it had been lost; (b) or was in possession of another person who refused to surrender it; (c) or was otherwise inaccessible; (d) or where the notice and the policy were sent to the

company, and all that remained to be done were certain formal and ministerial acts on the part of the company, and these acts were either not done at all or were done after the death of the insured.' Cronbach v. Aetna Life Ins. Co., 153 Tenn. 362, at pages 366, 367, 368, 284 S.W. 72 at page 73.

"We think the instant case falls within subsection d of paragraph 4 supra. As was said by the Supreme Court of Michigan: 'The insured did all that was required of him, and there remained only a ministerial act on the part of the company to complete the change, an act which the company was bound to perform and undoubtedly would have performed had it not been for the intervention of death prior to the notice reaching the home office of the company.' Equitable Life Assurance Society [of United States] v. Hitchcock, 270 Mich. 72, 258 N.W. 214, 215, 106 A.L.R. 591.''

In the Cronbach case the facts were these:

"About a month before the death of the insured he had procured the company to change the beneficiary clauses in said policies so as to provide that the company should pay monthly interest on the principal, at the rate of 3.6 per cent. per annum, to his wife and daughter for a period of 20 years, at which time other and different settlements were to be made.

"On the night of February the 18th, 1924, the insured suddenly became violently ill, was carried to his home and a physician summoned. After consultation it was decided that an immediate surgical operation was necessary, and while the physician was arranging for ambulance and hospital accommodations the insured talked over his business affairs with his wife and a

friend, and decided that, on account of recent financial reverses, and in order to secure an adequate support for his wife in case of his death, he would change said policies so as to make her sole beneficiary thereunder. He had his wife to procure his lock box from a closet, gave her the key to same, and she had taken the policies from said box and was looking for the beneficiary clauses when the insured was seized with such paroxysms of pain that he was unable to do more in effecting a change of beneficiary, was taken immediately to the hospital, operated upon, and died nine days later without ever having recovered sufficiently to transact any business.

"It clearly appears that the defendant intended and desired to change the beneficiary clauses, as indicated, and would have done so in the regular way but for the fact that he was prevented by the circumstances detailed above.

"The complainant contends that when the insured has done all that was reasonably in his power to do in order to comply with the rules of the company, but failed to do so, and dies before the change is formally made, a court of equity will treat the substitution as complete, on the principle that in equity that will be decreed done which ought to have been done.

"The provision in the policies, with reference to a change of beneficiary, is as follows:

" 'The beneficiary may be changed as often as desired, and such change shall take effect on receipt at the home office of the company, before the sum insured or any installment thereof becomes due, of a written request, accompanied by the policy for indorsement.' "

Our Tennessee Supreme Court held that there was no substantial compliance with the provisions of the policy relating to a change of beneficiary and the claim of the wife was denied.

In the case of Barnes v. Prudential Insurance Company the insured's wife who was named as beneficiary in his policy had left him and he made request of his superior at the Mead Corporation where he worked for a change in beneficiary. He signed a form request furnished by the insurer to the employer for a change of beneficiary from his wife to his nephew. He died before the request was forwarded to the insurance company. The Court of Appeals held that there had been a substantial compliance with the terms and provisions of the policy and the nephew was allowed to recover.

We find no merit in the appellant's third assignment of error that the Aetna Insurance Company waived any objection to the mode of filing the request for change in beneficiary by paying the proceeds of the insurance contract into court. Admittedly the Aetna Insurance Company owed the full amount of these two insurance contracts. Either the complainant, Lillie Boles, was entitled to recover the proceeds or the defendant, Charles W. Croom. The paying of the money into court merely operated to release Aetna Life Insurance Company from further responsibility in the case. Assignment of error No. III is therefore respectfully overruled.

The other two assignments of error assail the action of the Chancellor in denying the plaintiff a recovery of the proceeds of said two insurance contracts and in holding that the insured, Jack Croom, was obligated to make some effort to forward the request for change in beneficiary to the insurance company during his lifetime. We

think these two assignments are well taken and must be sustained for the following reasons:

The insured was the complete owner of the two insurance policies. He had the unlimited and unconditional right to change the beneficiary from time to time and at any time he wished. The policies were issued to him through his employer, the International Harvester Company. When the insured became seriously ill in the Baptist Hospital in Memphis, Tennessee, he had his close friend attempt to change the beneficiary on the two policies by communicating with Mr. Strickland of the insurance department at International Harvester Company by telephone. Upon being informed by his close friend, Mr. Huston, that he was required to put his change of beneficiary in writing, Mr. Croom took the memorandum from Mr. Huston and wrote and signed a clear unequivocal statement that he wanted his housekeeper, the complainant, to have his insurance. True Mr. Croom used the word "will" instead of the more formal and proper language of a request for change in beneficiary from Charles Croom to Lillie Pearl Boles. The record indicates that Mr. Croom was a layman. Undoubtedly he used the word "will" as meaning that she would receive the benefits of the insurance after his death. He had already executed a holographic will. The paper writing signed by him on Sunday, February 4, 1962, was not intended by him to be a restatement of his holographic will. We think it is significant that he used the same piece of paper on which Mr. Huston had written the telephone number, the name and address of Mr. Strickland who was in charge of the insurance department of his employer.

The "change of beneficiary clauses" of the two policies in controversy are more liberal than any which have been

considered by our Tennessee appellate courts to date. The language of the policies does not require that request for change of beneficiary be forwarded to the company by the insured. Such language expressly provides that the change in beneficiary will be valid even though filed with the company after the death of the insured.

The memorandum signed by Mr. Croom bearing the name, address and telephone number of Mr. Strickland, head of the insurance department of International Harvester, naming the complainant, Lillie Pearl Boles, as the beneficiary of said two policies constituted a written request for change of beneficiary within the meaning of the policies. The insured, Mr. Croom, delivered this written instrument to the beneficiary and instructed her to take it to her lawyer upon his death. The lawyer for complainant notified the insurance department of International Harvester Company of complainant's claim as substituted beneficiary immediately upon the death of Mr. Croom.

Jack Croom, the insured, died thinking he had complied with the provisions of the policies and believing that he had in fact properly designated Lillie Pearl Boles as the new beneficiary under his two policies. The evidence is overwhelming that he did not want his brother, the defendant, to have the proceeds of these two policies.

We find that Jack Croom did all that he thought he was required to do in order to change the beneficiary on his two life insurance policies. We further hold that implicit in Jack Croom's instructions to the new beneficiary to take the written request for change in beneficiary to her lawyer immediately upon his death is the instruction also to have the attorney file such request with the employer or insurance company. This action was

authorized by the language of the policies and it was not necessary for the insured to mail or attempt to send the request for change in beneficiary to his employer or the insurance company in his lifetime. The action of Jack Croom, the insured, as above set out constituted a substantial compliance with the terms and provisions of the two policies within the general rule announced in Cronbach v. Aetna Life Insurance Company, 153 Tenn. 362, 284 S.W. 72, and Barnes v. Prudential Insurance Company, 28 Tenn. App. 109, 186 S.W.(2d) 918. The decree of the Chancellor is therefore respectfully reversed and a judgment will be entered in favor of the complainant, Lillie Pearl Boles, as herein set out. The costs will be taxed against the appellee, Charles Croom.

Avery, P.J.(W.S.), and Bejach, J., concur.