IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
August 7, 2024 Session

## THOMAS FURTSCH, PERSONAL REPRESENTATIVE OF THE ESTATE OF MICHAEL EDWARD BIRDWELL v. TAMMY ANN O'DELL

**Appeal from the Chancery Court for Putnam County**
**No. 2023-6   Ronald Thurman, Chancellor**

———————————————————

**No. M2024-00025-COA-R3-CV**

———————————————————

This appeal involves a claim for breach of contract filed by the personal representative of a deceased husband's estate against his former wife, asserting that the former wife breached the parties' marital dissolution agreement by accepting the proceeds of the former husband's retirement account upon his death. The parties' marital dissolution agreement had provided that the retirement account would be "the sole and absolute property of the Husband" and that any "marital interest" the wife had was divested from her and vested in the husband. However, the wife remained the designated beneficiary of the account when the husband died six years later. Cross-motions for summary judgment were filed by the estate and by the wife. The trial court granted summary judgment to the estate, concluding that the wife breached the marital dissolution agreement and that the estate was entitled to the entire sum in the account. The wife appeals. For the following reasons, we reverse the decision of the chancery court and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed and Remanded**

CARMA DENNIS MCGEE, J., delivered the opinion of the court, in which W. NEAL MCBRAYER and JEFFREY USMAN, JJ., joined.

Sharon Reynolds Clark and Patrick C. Cooley, Kingston, Tennessee, for the appellant, Tammy Ann O'Dell.

Michael D. Galligan, McMinnville, Tennessee, for the appellee, Thomas Furtsch, Personal Representative of the Estate of Michael Edward Birdwell.

**OPINION**

# I. FACTS & PROCEDURAL HISTORY

Michael Edward Birdwell and Tammy Ann O'Dell were divorced by decree in 2015. At that time, Mr. Birdwell had a retirement account resulting from his employment with Tennessee Tech, and Ms. O'Dell was designated as the beneficiary. The final decree incorporated and adopted a marital dissolution agreement executed by the parties, which contained the following provisions that are pertinent to this appeal:

> This agreement made and entered into on this the <u>23</u> day of <u>October</u>, 2015, by and between MICHAEL E. BIRDWELL, hereinafter referred to as Husband and TAMMY A. O'DELL hereinafter referred to as Wife.
>
> . . .
>
> WHEREAS, the parties hereto desire to make a complete and final settlement of all property now owned by the parties hereto and to settle all claims as to any property which may here and after be acquired by them; and
>
> NOW, THEREFORE, for and in consideration of the premises hereinabove contained, the parties hereto agree as follows:
>
> . . .
>
> <u>SIXTH</u>: The parties agree that they will receive their own separate savings, checking, retirement or any other accounts that are currently maintained in their name. Specifically the Husband has a retirement account with TIAA-CREFF which shall be the sole and absolute property of the Husband. Any marital interest either party has in and to said accounts is hereby divested out of them and vested in the party receiving the account as their sole separate property. The joint savings account at Progressive Savings Bank ending in 2996 shall be the sole and absolute property of Tammy A. O'Dell.
>
> . . .
>
> <u>ELEVENTH</u>: It is understood and agreed between the parties, as part of the consideration for the execution of this Agreement, that each party shall willingly execute and deliver any and all instruments necessary or required in order to implement the terms of this Agreement.
>
> . . .
>
> <u>THIRTEENTH</u>: It is understood and agreed between the parties that this Agreement is intended to be a final settlement of all property rights of the respective parties hereto and is a discharge from all of the claims arising out of their marital relationship, and that each hereby waives and relinquishes to the other all rights or claims which each may have or hereafter acquire under the law of any jurisdiction of the other's property, including without limitation, dower, curtsey, statutory allowance, homestead rights, right to take against the will of the other, inheritance, descent or distribution or right to as Administrator or Executor of the other's estate, and this Agreement applies to all property now owned by the Wife and Husband, or any property

that either of them may acquire in the future.

FOURTEENTH: This Agreement shall be binding upon and inure to the benefit of the parties hereto, their personal representatives, heirs and assigns.

Mr. Birdwell was represented by counsel during the divorce proceedings, while Ms. O'Dell was not.

Six years later, in February 2022, Mr. Birdwell executed a power of attorney naming Dr. Jeff Roberts and another individual as his co-attorneys in fact. At that time, Mr. Birdwell was physically ill but mentally competent. According to Dr. Roberts, Mr. Birdwell asked him to change the beneficiary designation on his retirement account from his ex-wife to his estate. In his capacity as attorney in fact, Dr. Roberts submitted documents attempting to change the beneficiary designation on Mr. Birdwell's retirement account from Ms. O'Dell to Mr. Birdwell's estate. Despite multiple attempts, however, the companies maintaining the retirement account refused to change the beneficiary designation.[1] Mr. Birdwell died on March 20, 2022. He left a will dated February 2022. Ms. O'Dell was not a beneficiary of Mr. Birdwell's estate under any provision of his will. However, Ms. O'Dell remained the named beneficiary on Mr. Birdwell's retirement account as of the date of his death. TIAA sent correspondence to Ms. Odell, requesting documents in order to begin the process of transferring the benefits of the retirement account to her. After Ms. O'Dell completed the necessary documents to claim the benefits, including a beneficiary acceptance form, she received the proceeds of the retirement account, which totaled $269,851.64. The residual beneficiaries under Mr. Birdwell's will were the Dr. Michael Birdwell Travel Fund of the History Department at Tennessee Technological University and WCTE, Inc.

The personal representative of Mr. Birdwell's Estate filed this lawsuit against Ms. O'Dell in January 2023. The complaint asserted three causes of action – breach of contract, unjust enrichment, and conversion. For the breach of contract claim, the complaint alleged that Ms. O'Dell's "acceptance of the proceeds" of the retirement account constituted a "failure to perform her obligations" under the marital dissolution agreement because she was completely divested of all interest in the account and was required to take action necessary to effectuate that divestment. The Estate sought to recover the entire amount of the retirement account proceeds in addition to interest and attorney fees. Ms. O'Dell filed an answer, admitting that she received the proceeds from the retirement account as the pay on death beneficiary but denying that the Estate was entitled to relief.

The Estate filed a motion for summary judgment only on the claim for breach of contract. The Estate asserted that there were no genuine issues of material fact and the

---

[1] In the event that the account owner had a duly executed power of attorney, in order for the attorney in fact to change the beneficiary, TIAA required the power of attorney to include language permitting the attorney in fact to make changes to beneficiary designations on accounts.

only question before the court was whether, as a matter of law, Ms. O'Dell breached a material provision of the marital dissolution agreement.[2] The Estate pointed out that the marital dissolution agreement said the account would be Mr. Birdwell's "sole and absolute property" and that any marital interest would be divested from Ms. O'Dell and vested in him. It also noted the language stating that each party waived and relinquished to the other "all rights or claims which each may have or hereafter acquire under the law of any jurisdiction of the other's property." The Estate also noted that Ms. O'Dell agreed to execute any instruments to implement the marital dissolution agreement, and the parties intended the agreement to constitute a final settlement of all property rights. Thus, the Estate argued that Ms. O'Dell was divested of "any interest whatsoever" in the retirement account, she had a continuing obligation to execute documents to effectuate this, and instead she did "the exact opposite" by executing documents to accept the funds after his death. The Estate contended that there was no need for Mr. Birdwell to change the beneficiary designation prior to his death because the marital dissolution agreement itself divested Ms. O'Dell of her interest and required her to execute any necessary documents to that effect. In support of its position, the Estate relied on this Court's decisions in *Lunsford v. Lunsford*, No. M2004-00662-COA-R3-CV, 2005 WL 2572389 (Tenn. Ct. App. Oct. 12, 2005), and *Manning v. Manning*, No. E2015-02082-COA-R3-CV, 2016 WL 3640317 (Tenn. Ct. App. June 30, 2016). The Estate also submitted numerous documents in support of its motion along with a statement of undisputed material facts.

Ms. O'Dell filed a response to the motion for summary judgment. She contended that the marital dissolution agreement only divested her of the *marital* interest she held in the retirement account, but the beneficiary designation was not a marital interest, so the agreement did not impact her capacity to be designated as a beneficiary. Ms. O'Dell claimed that a change to the beneficiary designation was never an express or intended term of the agreement. She contended that Mr. Birdwell did become the "sole and absolute" owner of the retirement account after the divorce and that he was vested with all property rights related to the account, including the right to designate any beneficiary he chose without her participation or approval. She also claimed that her obligation to execute documents only extended to those necessary to implement the agreement's terms, and it did not extend to any release of rights as a named beneficiary of the retirement account. Ms. O'Dell submitted her own affidavit in which she stated that she was never asked by Mr. Birdwell to sign any document to change the beneficiary designation. As such, Ms. O'Dell argued that she "fully performed the terms of the MDA" and did not breach it. Ms. O'Dell claimed that she had "lawfully received" the funds as the properly named beneficiary on the account. In support of her position, Ms. O'Dell relied on *Bowers v. Bowers*, 637 S.W.2d 456 (Tenn. 1982), and argued that the *Lunsford* and *Manning* cases cited by the Estate were distinguishable. Ms. O'Dell also filed her own motion for summary judgment, restating these arguments regarding the breach of contract claim, but

---

[2] The Estate took the position that the claim for breach of contract should be decided before the claims for unjust enrichment and conversion.

her motion also addressed the claims for conversion and unjust enrichment. Ms. O'Dell argued that, under Tennessee law, a marital dissolution agreement has been held to effectuate a change in beneficiary only in rare circumstances, and the facts of this case did not fit into one of those "rare exceptions" recognized in *Lunsford* and *Manning*. Instead, she argued that the result was controlled by the decision of the Tennessee Supreme Court in *Bowers*.

The Estate filed a response to Ms. O'Dell's motion for summary judgment, reiterating the arguments from its own motion. The Estate maintained that the parties' intention in the marital dissolution agreement, "notwithstanding legal jargon," was for Ms. O'Dell to receive no benefit from the retirement account. The Estate also clarified that it was not taking the position that Ms. O'Dell needed to execute any documents to effectuate her divestiture; rather, the Estate only demanded that Ms. O'Dell *not* execute documents enabling her to receive funds that did not belong to her. The Estate argued that Ms. O'Dell submitted the necessary paperwork to receive the funds when "[t]he MDA prohibited her from doing so." The Estate conceded that in most life insurance and annuity cases, a marital dissolution agreement does not change beneficiary designations, but it argued that *Bowers* was distinguishable because here the parties' marital dissolution agreement specifically referred to Mr. Birdwell's retirement account, which, the Estate argued, was a "critical" difference. The Estate insisted that *Lunsford* and *Manning* controlled the result here.

After a hearing, the trial court entered an order resolving the competing motions for summary judgment. Finding no genuine issue of material fact, the trial court granted summary judgment to the Estate and denied the motion filed by Ms. O'Dell. The trial court's order stated that the court had considered all of the "filings and arguments" before the court, but the order did not contain any discussion of the cases relied on by the parties, such as *Bowers*, *Lunsford*, or *Manning*, nor did it cite any other legal authority in support of its decision. Instead, the trial court stated that "the Court must look to the four corners of the agreement and interpret it in a fair and just way, not reading anything into it but looking at the plain meaning of the wording and try to glean what the interest of the parties were at the time this was entered in 2015." The trial court deemed the language unambiguous. It then made the following findings:

25. Paragraph 6 of the MDA, which was adopted and approved by this Court in the final order, divests the marital interest that Ms. O'Dell had in Mr. Birdwell's TIAA Annuity and vested the same in him.
26. In accordance with Paragraph 11, each party agreed to willingly execute and deliver any and all instruments necessary or required in order to implement the terms of their agreement.
27. As a result of Paragraph six (6) of the parties MDA, Mr. Birdwell acquired Ms. O'Dell's marital interest back from her in his retirement contract.

28. Mr. Birdwell was then the sole owner of the retirement contract.

29. Mr. Birdwell never took any steps to remove Ms. O'Dell from his TIAA Annuity after the parties were divorced.

30. Ms. O'Dell did not waive her right to be a beneficiary of this account, however, Paragraph 13 basically says that the MDA was intended to apply to all marital rights that the parties had at the time of the divorce or any property that either of them may acquire in the future and it is that broad language of Paragraph 13 that invokes Paragraph 11 of the MDA which means that Ms. O'Dell agreed that if she acquired any rights in the future in the Retirement Account she would sign any documents necessary to divest herself from them.

31. Without this language in Paragraph 13 of the MDA, Ms. O'Dell would be entitled to the assets of the TIAA Retirement Account.

32. Paragraph 14 of the MDA makes the MDA binding on the parties and their personal representatives, heirs and assigns which means that the MDA entered into between Mr. Birdwell and Ms. O'Dell now inures to the Estate of Mr. Birdwell.

33. Based upon the foregoing Findings, which are incorporated into this Court's Order by reference as though more fully set out, the Court grants the Motion for Summary Judgment of the Petitioner, the Estate of Birdwell, and denies the Respondent's Motion for Summary Judgment.

Ms. O'Dell filed a notice of appeal to this Court. Thereafter, an agreed order was entered, amending the original summary judgment order to further provide that the Estate was entitled to the relief sought based on the court's finding that Ms. O'Dell breached the marital dissolution agreement. The agreed order further provided that "[a]ll other causes of action of the Plaintiff are dismissed[.]"

## II. ISSUES PRESENTED

Ms. O'Dell presents the following issues for review on appeal:

1. Whether the Chancery Court erred in finding the terms of the Marital Dissolution Agreement ("MDA") rather than the TIAA-CREF Retirement Accounts ("the Retirement Accounts") contracts controlled the distribution of the Retirement Accounts.

2. Whether the Chancery Court erred in finding that the terms of the MDA extended beyond a division of marital interests in property to include all interests in current and future property rights of the parties despite express terms limiting the scope of the contract to marital property.

3. Whether the Chancery Court erred in finding that the MDA required the parties to divest themselves of nonmarital property interests, specifically being a designated

- 6 -

beneficiary.

4.    Whether the Chancery Court's interpretation of the MDA created an ambiguity in terms which it should have construed against Birdwell as the represented and drafting party of the MDA.

For the following reasons, we reverse the decision of the chancery court and remand for further proceedings.

## III.   STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. We review a trial court's decision on a motion for summary judgment de novo with no presumption of correctness. *Lemon v. Williamson Cty. Sch.*, 618 S.W.3d 1, 12 (Tenn. 2021) (citing *Tatham v. Bridgestone Ams. Holding, Inc.*, 473 S.W.3d 734, 748 (Tenn. 2015)).

## IV.   DISCUSSION

On appeal, Ms. O'Dell maintains that the result in this case is controlled by the Tennessee Supreme Court's decision in *Bowers*, and the cases that have "consistently" followed its reasoning since it was decided. In response, the Estate argues that this Court's decisions in *Lunsford* and *Manning* "created an exception to the holding in *Bowers*," and this case "fits the exception." Consequently, we must examine the *Bowers* decision and the many cases that have applied it over the years, as well as the few cases that have distinguished it.

We begin with *Bowers*, which was decided by the Tennessee Supreme Court in 1982. *Bowers*, 637 S.W.2d at 456. In that case, the husband had a life insurance policy through his employer,[3] and his wife was named as sole beneficiary of the policy during their marriage. *Id.* at 457. They subsequently divorced and executed a property settlement

---

[3] "[W]hen the right to change the beneficiary [of a life insurance policy] has been reserved to the insured/owner and is not otherwise overridden, 'the beneficiary named in the policy has a mere expectancy and has no vested right or interest in the policy.'" *Holmes v. Karkau*, No. M2021-00696-COA-R3-CV, 2022 WL 1232910, at *5 (Tenn. Ct. App. Apr. 27, 2022) (quoting *First Nat'l. Bank of Shelbyville v. Mut. Benefit Life Ins. Co.*, 732 S.W.2d 278, 279 (Tenn. Ct. App. 1987)). This mere expectancy "'does not rise to the dignity of a property right.'" *Id.* at *6 (quoting *Fidelity Mut. Life Ass'n v. Winn*, 33 S.W. 1045 (Tenn. 1896)). The beneficiary's mere expectancy "is analogous to a donee's interest in a future gift or a legatee's interest in a will before the testator's death." *Id.* "In such a case 'the designation' of the beneficiary 'is in the nature of an inchoate or unexecuted gift, revocable at any moment by the donor, and remaining wholly under his control.'" *Id.* (quoting *Winn*, 33 S.W. at 1045-46). Thus, "a beneficiary's expectancy does not constitute a marital asset in a divorce action." *Id.* (citing *Bell v. Bell*, 896 S.W.2d 559, 562, 564 (Tenn. Ct. App. 1994)).

agreement. *Id.* at 456. Thirty-four days after the divorce, the husband died, and the wife was still the named beneficiary under the policy. *Id.* at 457. The sister of the decedent brought suit on behalf of two children against the ex-wife. *Id.* The trial judge awarded the policy proceeds to the ex-wife "as named beneficiary," but the majority of the Court of Appeals reversed. *Id.* "The majority regarded as significant the language of the settlement agreement that 'each party relinquishes to the other any rights or claims not provided for herein,' and the fact that wife was represented by counsel at the time of the execution of the agreement and husband was not[.]" *Id.* The majority reasoned that "a layman reading a property settlement agreement with the same or similar language . . . would believe . . . that each spouse had in fact relinquished all rights that he or she had in the property of the other." *Id.* Thus, the Court of Appeals held that "where the property settlement agreement and resulting decree of divorce generally divest a former spouse of all rights or claims not provided for herein," and the former spouse suffers an untimely death a short time later without changing the beneficiary, "there is a rebuttable presumption created that all of the former spouse's rights in the proceeds of any life insurance have been terminated." *Id.* However, the dissenting judge concluded that "being the beneficiary of a husband's life insurance was not a right or claim arising out of the marital relationship and thus was not 'relinquished' or 'waived' by the property settlement agreement and therefore the proceeds of the policy passed to the wife by insurance contract law." *Id.*

On appeal, the Supreme Court framed the issue as "whether a property settlement agreement incorporated in a divorce decree, wherein wife released husband from all claims arising out of the marital relationship and waived any other rights not provided for therein, should be construed as effecting a change in beneficiary of husband's life insurance," where she remained the named beneficiary upon his death thirty-four days after the divorce. *Id.* at 456-57. The Supreme Court explained that the issue was "one of first impression in this State and there is respectable authority in other jurisdictions that supports either result." *Id.* at 458. However, the Supreme Court concluded that the Court of Appeals dissent had expressed "the better view." *Id.* at 457. The Supreme Court quoted "the essence of that opinion," which stated:

> Being a beneficiary of the life insurance of her ex-husband was not a 'property right', a result of an 'obligation to support a wife', a 'right', or a 'claim' which was waived and relinquished by the property settlement agreement. The husband was under no duty by law or contract to have life insurance in the first place or to designate the defendant as the beneficiary of it; he could have changed the beneficiary at any time without encountering any of the defendant's rights; she simply had no claim with respect to the life insurance. Therefore the terms of the property settlement agreement do not affect the life insurance policy at all. This is the majority view and the better view in my opinion. *See* 46 C.J.S., Insurance, s 1160, and Couch on Insurance 2d. s 27.111.
>
> The majority opinion however does not stand entirely on what it calls

the 'broad and general' provisions of the release. The majority creates a rebuttable presumption out of the release and the untimely death of the insured a 'short time' later and the lack of a 'reasonable' time within which to change the beneficiary. Even under that test the Trial Judge should be affirmed. Thirty-four days is not a 'short time' and is a 'reasonable' time within which to change a beneficiary of life insurance, or at least to make a start at it.

Furthermore, in my opinion that period of time after the divorce is granted should not be given the significance that it apparently is by the majority. A divorce does not come as an earthquake, without warning, to suddenly break apart a marriage where one day the parties are happy and the next day headed for divorce. A divorce is generally the result of a long smouldering process of discontent and disenchantment. The parties have months in which to contemplate and consider all the ramifications of the divorce.... In such a situation the number of days after the divorce is granted is far less significant and should not give rise to a presumption that the deceased intended to change the beneficiary of his life insurance.

*Id.* at 457-58. After discussing caselaw from other jurisdictions addressing the issue, the Supreme Court concluded by stating, "It is our view that the property settlement agreement had no force and effect whatever upon the life insurance policy and neither the agreement nor the divorce terminated wife's status as named beneficiary in the policy or her right to receive the proceeds." *Id.* at 459.

The following year, the Tennessee Supreme Court described its holding in *Bowers* as a "refus[al] to apply a rule of presumed revocation, either conclusive or rebuttable, to an insurance policy designation where the decedent continued his former wife as beneficiary." *In re Est. of Perigen*, 653 S.W.2d 717, 720 (Tenn. 1983). The Court noted that *Bowers* had involved a property settlement agreement that "in rather sweeping terms purported to release all claims which either party had against the other, but despite this fact the Court held" that it "'had no force and effect whatever upon the life insurance policy and neither the agreement nor the divorce terminated wife's status as named beneficiary in the policy or her right to receive the proceeds.'" *Id.* (quoting *Bowers*, 637 S.W.2d at 459). Simply put, "[*Bowers*] held that the divorce and property settlement had no effect upon the beneficiary designation, and the former wife was permitted to receive the insurance proceeds." *Id.* (citing *Bowers*, 637 S.W.2d at 459).

This Court applied the *Bowers* holding in *Mathews v. Lawrence*, 703 S.W.2d 156, 157 (Tenn. Ct. App. 1985), an interpleader suit filed by the State Treasurer to determine the right to receive accumulated retirement contributions held for the benefit of a deceased husband. The two defendants were the former wife of the deceased and the decedent's estate. *Id.* Prior to his divorce, the decedent had designated his wife as the person to

receive the accumulated contributions upon his death.[4]  *Id.*  However, the divorce decree incorporated a final property settlement that provided:

> Each party hereto does hereby release and discharge the other from all obligations of support and from all other claims, rights, and duties, except as hereinabove set out, arising or growing out of said marital relationship, including alimony, etc., and said parties mutually agree that each party hereto may freely sale (sic), or otherwise dispose of his or her property by gift, deed, or last will and testament; and each party is, by these presents, hereby forever barred from any and all claims of rights against the other party, or the property or estate of other party by way of inheritance, descent, distribution, homestead, allowance of one year's support, and other rights or claims whatever in or to the estate of the other, whether real, personal, or mixed, and whether now owned or hereinafter acquired.

*Id.*  This Court explained that the accumulated contributions, subject to withdrawal by the husband, were "marital property" and were "subject to consideration in the division of marital property."  *Id.* at 158.  "However, the designation of [the wife] as the survivor to whom refund of contributions should be made created an individual interest which entitled her to payment unless the designation should be revoked."  *Id.*  The estate argued that the property settlement agreement "expressly waived" the wife's right to the refund of contributions, as it stated, "[E]ach party is ... barred from ... claims ... to the property or estate of the other by way of inheritance ... and other rights or claims ... to the estate of the other[.]"  *Id.*  Still, the Court explained that her right as designee of the refund was not a right of inheritance or a claim against the estate of the deceased.  *Id.*  It was a contractual right against the Treasurer of the State, although it "was subject to termination by cancellation of the designation during the lifetime of deceased."  *Id.*  Ultimately, we concluded that the ex-wife's status "as designated beneficiary of refund of contributions is not materially different from the position of a designated beneficiary of an insurance policy," so *Bowers* was "deemed to be controlling."  *Id.*  We affirmed the trial court's determination that the former wife was entitled to the fund.  *Id.* at 157-58.

In *Teachers Insurance & Annuity Association v. Harris*, 709 S.W.2d 592, 593 (Tenn. Ct. App. 1985), TIAA filed an interpleader action to determine the primary beneficiary of two retirement and annuity contracts, where the decedent's first wife was the named beneficiary and his second wife was his surviving widow.  The divorce decree "purportedly settled all claims for property between the decedent and his first wife," so the second wife argued that the first wife had "waived her interests in the proceeds from the

---

[4] Upon the death of a member prior to retirement, his or her accumulated retirement contributions were to be paid to his or her estate or to the person he or she nominated by written designation.  *Mathews*, 703 S.W.2d at 157.  Thus, the funds at issue were not a retirement benefit but a refund of contributions to a retirement fund because no retirement benefits were paid.  *Id.*

annuity contracts" in the divorce decree. *Id.* at 593-94. The decree provided:

> It is agreed by the parties that this Agreement shall be a final settlement of the property rights of the respective parties, and it is a full discharge of Husband from all other claims arising out of the marital relationship, that each party hereby waives and relinquishes to the other party all rights or claims which he or she may have or hereafter acquire under the law of any jurisdiction to the other's property, including without limitation, dower, curtesy, statutory allowance, homestead rights, rights to take against the will of the other, inheritance, descent or distribution, and the right to act as administrator or executor of the other's estate. This instrument applies to all property now owned by the parties either jointly or individually, or any property which either of them may acquire in the future.[5]

*Id.* at 595. The trial court held that the first wife was entitled to the proceeds, and this Court affirmed. *Id.* at 594, 596. We concluded that "the provisions of the divorce decree do not waive any rights [the first wife] had as the designated beneficiary on these annuity agreements." *Id.* at 595. We explained,

> In *Bowers v. Bowers*, 637 S.W.2d 456 (Tenn. 1982), our Supreme Court had the identical question concerning a life insurance contract. In that case the divorce decree said, "Each party relinquishes to the other any right to claims not provided for herein." Nevertheless, the Supreme Court held that the property settlement agreement had no force and effect whatever upon the life insurance policy and neither the agreement nor the divorce terminated the wife's status as named beneficiary or her right to receive the proceeds. Although the appellant in this case argues that there is a difference between annuity agreements and a life insurance policy, we are unable to see any distinction. We think this case is governed by the decision in *Bowers*. Therefore, considering the provision of the divorce decree, we think that the question presented to the Chancellor in the court below was a matter of law which is resolved against the appellant's contention by the decision in

---

[5] Notably, the provision at issue in *Harris* was nearly identical to the thirteenth paragraph of the marital dissolution agreement executed by Mr. Birdwell and Ms. O'Dell in this case, which provides:

It is understood and agreed between the parties that this Agreement is intended to be a final settlement of all property rights of the respective parties hereto and is a discharge from all of the claims arising out of their marital relationship, and that each hereby waives and relinquishes to the other all rights or claims which each may have or hereafter acquire under the law of any jurisdiction of the other's property, including without limitation, dower, curtesy, statutory allowance, homestead rights, right to take against the will of the other, inheritance, descent or distribution or right to as Administrator or Executor of the other's estate, and this Agreement applies to all property now owned by the Wife and Husband, or any property that either of them may acquire in the future.

- 11 -

*Bowers*.

*Id.* The former wife, as the designated beneficiary, was entitled to the funds. *Id.*

The Tennessee Supreme Court applied *Bowers* again in *Mathews v. Harris*, 713 S.W.2d 311 (Tenn. 1986). The issue in that case was whether, under the Tennessee Consolidated Retirement System statutes, the decedent's first wife, as designated beneficiary of the retirement benefits, was entitled to priority over a non-designated surviving spouse. *Id.* at 312. The husband became a member of the retirement system in 1947 and designated his then-wife as beneficiary. *Id.* In 1965, he executed another form again naming his wife as beneficiary. *Id.* They divorced in 1982, and she remained the designated beneficiary thereafter. *Id.* However, "a detailed property settlement agreement had been entered into and incorporated into the final decree," and it "contained a complete waiver of any rights of either spouse against the other." *Id.* at 313. Thus, the second wife argued that "the terms and provisions of the property settlement agreement had the effect of vitiating the 1965 designation of beneficiary." *Id.* "On the authority of *Bowers*," the trial court held that "the previous designation was not affected by the subsequent divorce proceedings which made no reference to it." *Id.* The Tennessee Supreme Court stated that it "concur[red] in that conclusion for the reasons stated in that opinion." *Id.* Just as in the case of the beneficiary designation on a life insurance policy, "the previous designation was not affected by the subsequent divorce proceedings which made no reference to it." *Id.*; *see also Mathews v. Burkeens*, 763 S.W.2d 739, 741 (Tenn. 1988) (citing *Mathews v. Harris*, 713 S.W.2d at 311).

Similar issues arose in *Sun Life Assurance Co. of Canada v. Hicks*, 844 S.W.2d 652, 653 (Tenn. Ct. App. 1992), where the husband's employer maintained a group life insurance policy for its employees, and he had initially named his mother as beneficiary but later changed it to name his wife. When the parties later divorced, the final decree "did not make any disposition of the right to any life insurance then carried by the [husband]." *Id.* His employer changed the group insurance plan and subsequently supplied a "survey" form to all employees regarding various information, on which the husband listed his mother as the beneficiary of his life insurance. *Id.* However, he did not follow the proper procedure to actually change the beneficiary designation with the plan administrator. *Id.* at 654. The trial court acknowledged that the husband did not follow the correct procedure but nevertheless awarded the proceeds to his mother, concluding that by listing his mother on the survey form he had expressed his intent on the matter and done everything reasonably possible to comply with the policy terms, establishing substantial compliance. *Id.* This Court reversed. At the outset, we cited *Bowers* for the rule that "[t]here is no presumption that an ex-spouse is removed as a beneficiary from an insurance policy by the mere fact that the parties have been divorced." *Id.* (citing *Bowers*, 637 S.W.2d at 456). We also pointed out that the final decree of divorce "in no way addressed Wife's rights under this life insurance policy." *Id.* As a result, we examined the trial court's holding that the husband had substantially complied with the terms of the policy for changing the

beneficiary by naming his mother as the beneficiary on the survey form. *Id.* We explained that "Tennessee has cast its lot as a 'substantial compliance' state as regards the issue of a change in beneficiary of an insurance policy." *Id.* Appellate court decisions on the issue were "fact specific" and had "reached different results."[6] *Id.* However, we concluded that this particular husband did not substantially comply with the requirements set forth by the insurance carrier, as he did not take all reasonable steps possible to meet the conditions of the policy. *Id.* He had twice before executed the proper cards to name his beneficiary, and there was no proof that the employer survey form was ever contemplated to be used to change a beneficiary. *Id.* at 654-55. The employee simply did not "avail himself of the use of the change of beneficiary card" as he had in the past. *Id.* at 655. As a result, the trial court erred in finding substantial compliance, and the wife was entitled to the proceeds of the policy. *Id.*

We briefly discussed the holding of *Bowers* in *Deckard v. Middleton*, No. 01-A-01-9502-CH0005, 1995 WL 428677, at *1 (Tenn. Ct. App. July 21, 1995), recognizing that in *Bowers* "our Supreme Court held that a property settlement does not extinguish a former wife's rights as *named* beneficiary of a life insurance policy." We also noted that "[t]his rule [was] followed" in four other cases cited on appeal. *Id.* However, this Court deemed *Bowers* and the other cases "inapposite to the facts of this case" because the beneficiary designation at issue did not designate anyone by name, it simply listed "the participant's spouse." *Id.* Because the beneficiary form "took effect at the time of death," the funds went to the surviving spouse. *Id.*

In *Travelers Ins. Co. v. Webb*, No. 01-A-01-9508-CH00379, 1996 WL 23491, at *1 (Tenn. Ct. App. Jan. 24, 1996), we considered another interpleader action, this time involving a dispute between two wives over the proceeds of a life insurance policy the husband had obtained through his employer. Again, the former wife was the designated

---

[6] On the issue of substantial compliance, we explained,

A mere unexecuted intention to change the beneficiary is not sufficient.... On the principle that equity regards as done that which ought to be done, the courts will give effect to the intention of insured by holding that the change of beneficiary has been accomplished where he has done all that he could to comply with the provisions of the policy, as where he sent a proper written notice or request to the home office of the company but was unable to send the policy by reason of circumstances beyond his control, as where it has been lost, or was in the possession of another person who refused to surrender it or was otherwise inaccessible, or where he sent both the policy and a proper written notice or request and all that remained to be done were certain formal and ministerial acts on the part of the company, such as the indorsement of the change of the policy, and these acts were either not done at all or were done after the death of insured. Of course the rule is not applicable where insured has not done all that he reasonably could to meet the conditions of the policy.

*Sun Life Assur. Co. of Canada*, 844 S.W.2d at 654 (quoting *Cronbach v. Aetna Life Ins. Co.*, 284 S.W. 72, 73 (Tenn. 1926)).

beneficiary at his death. *Id.* We held that the trial court "correctly applied Tennessee law" in holding that "the person entitled to a policy's benefits is the person designated as the beneficiary in the insurance contract." *Id.* at *2. As the chancellor correctly stated, "An insurance contract-insurance policy is a contract between the policy owner and the insurance company, and the policy owner can designate the beneficiary he or she desires." *Id.* In the *Webb* case, there were no disputed facts, as the husband had designated the beneficiary and never changed it or took steps to change it, so summary judgment was appropriate. *Id.* The second wife argued on appeal that the "divorce destroyed [the first wife's] rights as the named beneficiary." *Id.* at *3. However, we deemed this argument "without foundation," with the following explanation:

> The courts of this state have consistently held that "[t]here is no presumption that an ex-spouse is removed as a beneficiary from an insurance policy by the mere fact that the parties have been divorced." *Sun Life Assurance Co. v. Hicks*, 844 S.W.2d 652, 654 (Tenn. App. 1992). The Tennessee Supreme Court held that neither a divorce nor a property settlement agreement has any impact upon the beneficiary designation of an insurance policy. *Bowers v. Bowers*, 637 S.W.2d 456, 459 (Tenn. 1982). Being a beneficiary of an insurance policy is not a "right or claim arising out of the marital relationship and thus [is] not 'relinquished' or 'waived' by the property settlement agreement and therefore the proceeds of the policy pass [ ] [to the designated beneficiary] by insurance contract law." *Id*. at 457. Thus, neither the divorce nor the property settlement agreement deprived [the first wife] of her rights as the named beneficiary of the policy.[7]

*Id.*

We discussed *Bowers* again in *Claiborne v. Claiborne*, No. 03A01-9708-CH-

---

[7] Addressing other arguments, the *Webb* Court also explained that "[the decedent's] will did not affect his life insurance contract." 1996 WL 23491, at *2. The second wife had argued that the decedent's expression in his will that he wanted her to have the insurance proceeds "amended the insurance contract." *Id.* However, "[w]hen there is no attempt to change the beneficiary according to the procedures set forth in the policy, the law of this state provides that a constructive trust does not arise, requiring distribution according to the terms of the will, even though the testator clearly indicated in his will that he wanted the insurance proceeds to benefit an individual other than the named beneficiary." *Id.* (citing *Stoker v. Compton*, 643 S.W.2d 895, 898 (Tenn. App. 1981)). "[T]he language in a will does not operate to deprive the named beneficiary of her rights to the policy proceeds." *Id.* (citing *Cook v. Cook*, 521 S.W.2d 808, 813 (Tenn. 1975)).

We also rejected the second wife's argument that there was a factual dispute regarding the issue of substantial compliance. *Id.* at *3. She claimed that the husband's change of the beneficiary on a different policy and his oral statements to family were "sufficient to invoke the doctrine of substantial compliance." *Id.* However, these arguments "demonstrate[d] a misunderstanding of the doctrine of substantial compliance." *Id.* The decedent made no attempt to comply with the insurer's requirements for changing the beneficiary of this policy, so there was no substantial compliance. *Id.* at *4.

- 14 -

00353, 1998 WL 259893, at *1 (Tenn. Ct. App. May 14, 1998), which involved a dispute over life insurance proceeds between an ex-wife and the decedent's estate. At the time of the decedent's divorce, his wife was designated as beneficiary of his life insurance policy. *Id.* The divorce decree required the husband to pay $36,000 to the wife over six years to equalize the division of marital property, and he was ordered to maintain a life insurance policy with the wife named as the irrevocable beneficiary for a minimum face value of $50,000 for the first three years during which his obligation was pending and $25,000 for the remaining three years of the obligation. *Id.* After the divorce, he left his existing policy "as it was," with the wife designated as the beneficiary, and the face amount of the policy at $140,000. *Id.* He died after having paid $12,000 of the obligation. *Id.* His daughter, as executrix of his estate, filed the lawsuit seeking a declaratory judgment that the ex-wife was entitled to receive only $50,000 of the life insurance proceeds. *Id.* Applying *Bowers*, the trial court found that the ex-wife was entitled to the full amount of the policy because "the settlement agreement incorporated in the divorce decree did not alter the rights of the named beneficiary under the insurance policy." *Id.* at *2. This Court affirmed. *Id.* To begin, we noted that the divorce judgment required the husband to maintain an insurance policy with a minimum value of $50,000, but it did not "purport to affect the provisions of any existing insurance contract." *Id.* "Notwithstanding the absence of any language in the trial court's judgment pertaining to the existing policy of insurance," the estate argued on appeal that "the intent of the parties at the time their agreement was reached concerning life insurance, and as incorporated into the final judgment of divorce, modified Wife's rights to the entire proceeds of the policy." *Id.* We explained that "Tennessee courts have considered the effect of a divorce property settlement agreement on insurance beneficiary designations," beginning with *Bowers*. *Id.* After a discussion of the relevant caselaw, we stated that the ex-wife in that case "[stood] to reap a windfall unless there is language in the final judgment of divorce which can reasonably be read as divesting the former spouse of her contractual rights as the named beneficiary under the policy." *Id.* at *3. However, we concluded that the terms of the divorce decree were "not at odds with the contract of insurance" and did not cause the wife "to forfeit the rights of a beneficiary under the insurance policy." *Id.* The "fair meaning of the divorce judgment" was that the husband could have reduced the insurance coverage to the minimum of $50,000, and the decision to maintain insurance above that amount was voluntary on his part. *Id.* We quoted "with approval" from the trial court's decision:

> The language in the judgment is that he maintain a minimum face value of fifty thousand dollars. Beyond that the matter was voluntary so that to the extent voluntariness controls the situation we think he voluntarily did maintain the larger amount of coverage.
> That's consistent with the discussion of the Ohio case in the *Bowers* case which indicates that divorce settlement language applying to other aspects of the marital relationship and settling those aspects of the property interest of the parties would not forfeit the rights of a beneficiary under an insurance policy.

Finally, in the *Bowers* case it is observed by the Court that the property settlement agreement had no force and effect whatever upon the life insurance policy and neither that agreement nor the divorce terminated the rights or status as a named beneficiary in the policy of the wife, or her right to receive proceeds. Now, that language doesn't totally apply here, but it does indicate this: that the parties in a divorce case that come to an agreement, and that was the situation here, are free to make such an agreement as they desire governing insurance, or let the matter stand and be governed by the policy as is.

*Id.* at *3-4. We likewise found nothing inconsistent between the terms of the divorce judgment and the wife remaining the policy beneficiary in the full amount of the policy. *Id.* at *4. Therefore, the decision of the trial court was affirmed.[8] *Id.*

This Court considered facts more similar to those before us in *In re Estate of Williams*, No. M2000-02434-COA-R3-CV, 2003 WL 1961805 (Tenn. Ct. App. Apr. 28, 2003) *perm. app. denied* (Tenn. Oct. 6, 2003). That case involved a dispute over a husband's sizeable estate following his untimely death shortly after his divorce. *Id.* At issue were several annuity contracts that named his ex-wife as the beneficiary. *Id.* The decedent's estate filed a complaint for declaratory judgment, asserting that the annuities belonged to the estate because of language in the parties' marital dissolution agreement. *Id.* Notably, the annuities "had been awarded to [the husband] in the final divorce decree, but [the wife] was still named as the beneficiary at his death." *Id.* at *17. Thus, the estate argued that *Bowers* was distinguishable because in *Bowers* the divorce decree "did not expressly address the life insurance policy at issue," but "the Williams MDA expressly referred to the annuity contract by name and number." *Id.* at *18. Despite this argument, the trial court could not conclude that "this distinction would cause the Supreme Court to carve out an exception to the *Bowers* rule of law." *Id.* Relying on "the controlling authority of *Bowers*," the trial court granted the wife summary judgment, awarding her the annuities as the named beneficiary thereof. *Id.*

On appeal, the estate argued that "the MDA specifically awarded Mr. Williams the annuity contracts at issue and, therefore, the trial court should have merely implemented

---

[8] We note that "Tennessee courts have utilized equitable grounds to protect persons *legally mandated* to be listed as beneficiaries of a life insurance policy." *Holt v. Holt*, 995 S.W.2d 68, 72 (Tenn. 1999) (emphasis added). Thus, "it is clear under Tennessee law that an enforceable agreement, such as a marital dissolution agreement, which mandates that an individual be listed as a beneficiary of a life insurance policy existing at the time of the agreement vests in that individual an equitable interest in the designated policy." *Id.* A beneficiary's "'mere expectancy' may be converted into a vested interest in the wife where the husband is required by a divorce decree to keep a life insurance policy in effect naming certain beneficiaries and is denied the right to change the beneficiary by such court order." *Bell v. Bell*, 896 S.W.2d 559, 562 (Tenn. Ct. App. 1994); *see also Hughes v. Hughes*, No. E2016-00561-COA-R3-CV, 2017 WL 57163, at *2 (Tenn. Ct. App. Jan. 5, 2017).

- 16 -

and enforced the MDA." *Id.* at *17. We explained that the question of the right to the annuity death benefit was a question of law, and like the trial court, we also deemed *Bowers* controlling. *Id.* at *17-19. We explained:

> In *Bowers*, the Supreme Court defined the single issue in that case as "whether a property settlement agreement incorporated in a divorce decree, wherein wife released husband from all claims should be construed as effecting a change in beneficiary of husband's life insurance, where wife was still the named beneficiary under the policy at the date of husband's death, thirty-four days after the divorce." 637 S.W.2d at 456. On that issue, the Court held that "the property settlement agreement had no force and effect whatever upon the life insurance policy and neither the agreement nor the divorce terminated wife's status as named beneficiary in the policy or her right to receive the proceeds." 637 S.W.2d at 459.
> In Tennessee a change of beneficiary must be accomplished in substantial compliance with the terms of the insurance contract. *Sun Life Assurance Co. v. Hicks*, 844 S.W.2d 652, 654 (Tenn. Ct. App. 1992). Consequently, our courts have held that a provision in a will attempting to change the beneficiary cannot vary the provisions of the contract.

> > [T]he language in a will does not operate to deprive the named beneficiary of her rights to the policy proceeds. *Cook v. Cook*, 521 S.W.2d 808, 813 (Tenn. 1975). When there is no attempt to change the beneficiary according to the procedures set forth in the policy, the law of this state provides that a constructive trust does not arise, requiring distribution according to the terms of the will, even though the testator clearly indicated in his will that he wanted the insurance proceeds to benefit an individual other than the named beneficiary. *Stoker v. Compton*, 643 S.W.2d 895, 898 (Tenn. App. 1981).

> *Travelers Ins. Co. v. Webb.*, No. 01-A-01-9508-CH-00379, 1996 Tenn. App. LEXIS 44, at *6 (Tenn. Ct. App. Jan. 24, 1996)[].
> It is well settled that divorce itself does not create a presumption that a former spouse is removed as a beneficiary. *Sun Life Assurance Co.*, 844 S.W.2d at 654. *Bowers* and its progeny established that a property settlement agreement also does not affect a designation of beneficiary. The same principles have been applied to a designation of beneficiary in an annuity contract, *Teachers Ins. & Annuity Assoc. v. Harris*, 709 S.W.2d 592, 595 (Tenn. Ct. App. 1985), because there is no relevant distinction between an insurance contract and an annuity contract.
> The Court's conclusion in *Bowers* rested in part upon its determination that being a beneficiary was not a right or claim arising out of

the marital relationship and, therefore, was not included in the property settlement's language waiving or relinquishing such rights and claims. 637 S.W.2d at 457-58. However, the Court also explicitly found that a property settlement agreement has "no force and effect whatever" upon a life insurance policy, indicating its reliance on legal requirements for changing a beneficiary. *Id*. at 459. The Estate argues that *Bowers* should not be applied herein because of the language of the MDA at issue. The Williams MDA listed, along with other assets, the three annuities, giving a value to each and awarding each to Mr. Williams "free of any claim by Wife." The Estate argues that the MDA explicitly grants the annuities to Mr. Williams and no further search for Mr. Williams's intent is required. It further asserts that a constructive trust should have been granted to prevent unjust enrichment to Kathryn Williams "as a matter of equity and good conscience."

There is nothing about the language in the MDA to make inapplicable the principles discussed above. Although *Bowers* interpreted general language waiving claims arising from the marriage, and Ms. Williams agreed to waive any claim to the annuities themselves, the fact remains that no attempt was made to change the beneficiary in compliance with the annuity contract provisions. If the explicit language of a decedent's will expressing an intent contrary to the designation of beneficiary cannot effectuate a change of beneficiary, certainly the "free of claim" language does not. We do not disagree that the MDA clearly awarded the annuities to Mr. Williams. As the owner, he was free to name any beneficiary he chose, including Ms. Williams, whether he was married to her or not.

*Id.* at *18-19. Thus, we affirmed the grant of summary judgment to the ex-wife and the resulting award to her of the proceeds. *Id.* at *19.

Despite this line of cases consistently ruling in favor of named beneficiaries, this Court reached the opposite result in *Lunsford v. Lunsford*, No. M2004-00662-COA-R3-CV, 2005 WL 2572389 (Tenn. Ct. App. Oct. 12, 2005). In *Lunsford*, the husband participated in his employer's retirement fund and designated his wife as the primary beneficiary of its pre-retirement death benefit. *Id.* at *1. His three children from a prior marriage were named as contingent beneficiaries. *Id.* When the parties divorced, they executed a marital dissolution agreement that provided:

Each spouse hereby further waives and releases except as otherwise provided herein, any right, title and interest which he or she may have now, or in the future, to any retirement payment or annuity by virtue of his or her being the spouse of the other party, and by virtue of such other party's employment, or by virtue of any other retirement program, plan or pension system which may have included the other party in the past, or which may include such other party now, or which may include the other party in the future. To this end

both parties declare that it is each's (sic) intent that this provision have the same force and effect as if he or she had signed any waiver forms releasing his or her aforementioned interest, but each further agrees to execute whatever documents may be required in this regard in the future, as necessary, to accomplish the purposes heretofore stated.

*Id.* However, the ex-wife remained the designated beneficiary when the husband died. *Id.* The personal representative of the decedent's estate filed a petition in the divorce action seeking to enforce the marital dissolution agreement and divest the wife of any interest in the death benefit. *Id.* The trial court granted the petition and entered a qualified domestic relations order directing that the proceeds be paid to the children as contingent beneficiaries, finding that "it was the intent of the parties, as set forth in the Marital Dissolution Agreement, that they each be divested of any right, title and interest that they may have in the retirement or pension benefits of the other." *Id.* at *2. On appeal, this Court affirmed, "[b]ecause of the specific language of the marital dissolution agreement." *Id.* at *1. We concluded that the particular language used in this marital dissolution agreement "differentiates this case from other cited cases," such as *Bowers. Id.* at *3. To that end, we explained,

We recognize that it is settled law in Tennessee that the designation of beneficiaries on life insurance policies and the death benefits in annuity agreements are matters of contract between the participant and the company or organization issuing the policy of life insurance or funding the annuity agreement. *Bowers v. Bowers*, 637 S.W.2d 456 (Tenn. 1982); *Sun Life Assurance Co. v. Hicks*, 844 S.W.2d 652 (Tenn. Ct. App. 1992); *Teachers Ins. & Annuity Assoc. v. Harris*, 797 S.W.2d 592 (Tenn. Ct. App. 1985); *In re: Estate of James H. Williams*, No. M2000-02434-COA-R3-CV (Tenn. Ct. App. April 28, 2003) (Tenn. R. App. P. 11 application denied October 6, 2003). As such, the beneficiary may be changed only by substantially complying with the contract provisions. *Sun Life Assurance Co. v. Hicks*, 844 S.W.2d at 654; *Massachusetts Mutual Life Insurance Company v. Henry*, 638 S.W.2d 410 (Tenn. App. 1982). It cannot be accomplished by will, *Cook v. Cook*, 521 S.W.2d 808 (Tenn. 1975); *Stoker v. Compton*, 643 S.W.2d 895 (Tenn. App. 1981), by completing a survey conducted by an employer, *Sun Life Assurance Co. v. Hicks*, supra., by a decree of divorce, *Bowers v. Bowers*, supra., or a marital dissolution agreement. *Teachers Ins. & Annuity Assoc. v. Harris*, 797 S.W.2d at 595.

We further recognize that, analytically, there would seem to be no practical distinction between a death benefit in an annuity agreement and the death benefit in a retirement plan and none has been propounded to us. Consequently, the rationale contained in the cases we have cited apply to the situation before the court. . . . According to the contract between Robert W. Lunsford and the YMCA Retirement Fund, Tina Lunsford was the

beneficiary of his pre-retirement death benefit at the time of his death.

The foregoing conclusion does not, however, end the inquiry before us. In the present case, the marital dissolution agreement provided that the appellant waived and released any right, title and interest which she had "to any retirement payment or annuity" by virtue of Robert Lunsford's employment. The agreement further provided that this waiver provision would have the "same force and effect as if ... she had signed any waiver forms releasing ... her aforementioned interest." Finally, Tina Lunsford agreed "to execute whatever documents may be required in this regard *in the future*, as necessary, to accomplish the purposes heretofore stated." (emphasis added). It is this continuing duty to execute whatever documents that may be required to accomplish the purpose and intent of the marital dissolution agreement that differentiates this case from other cited cases. At the time of his death, Robert Lunsford clearly had a contractual right to require the appellant to execute any document that might be required to effectuate her waiver and release of any interest she might have in retirement or annuity benefits. Following his death, Mr. Lunsford's personal representative had the right to enforce this contractual provision in his behalf. Since the trial court could have required the appellant to execute a waiver and release of Mr. Lunsford's retirement plan *death benefit*, it was not error to divest the appellant of any interest she might have in the benefit and award it to the contingent beneficiaries by way of a QDRO.

*Id.* at *2-3 (emphasis added). Thus, the decision of the trial court was affirmed. *Id.*

In another case one year later, however, this Court declined another invitation to distinguish *Bowers* on various grounds and instead found it controlling. In *Shell v. Dills*, No. E2005-02636-COA-R3-CV, 2006 WL 3193659, at *1 (Tenn. Ct. App. Nov. 6, 2006), we considered a dispute over death benefits from an employer's retirement plan, with the dispute being between a former spouse who was the designated beneficiary and the decedent's estate. The executor alleged that the decedent had inadvertently failed to change the beneficiary designation following his divorce and that his new wife and child were his "natural and testamentary" beneficiaries at his death. *Id.* The marital dissolution agreement provided:

It is mutually understood and agreed by and between the parties hereto that this is a complete and final Marital Dissolution Agreement between them; and that in the event a divorce is granted, neither of them will ever hereafter have any property claims whatsoever against the other, except as provided for and described herein.

*Id.* The trial court ruled in favor of the ex-wife as the named beneficiary, "stating the case was controlled by the Supreme Court's decision in *Bowers*[.]" *Id.*

- 20 -

On appeal, we likewise explained that "[t]he body of case law applicable to this controversy arose in the seminal case of *Bowers*[.]"  *Id.* at *2.  The estate argued that "*Bowers* and its progeny [were] not dispositive, because in those cases, the MDA did not contain an obligation of future conduct after the divorce, as found in this MDA."  *Id.*  Specifically, the estate argued that when the ex-wife filled out the application to accept the refund of the benefit contributions, "she violated her continuing obligation under the MDA to refrain from making any property claims against the husband."  *Id.*  After a detailed discussion of *Bowers*, *TIAA v. Harris*, and *Mathews v. Harris*, we returned to the estate's contention that "this case should be distinguished from *Bowers* and its progeny because the parties' MDA contains a 'continuing' obligation of 'future' conduct, and thus the wife's contractual obligation to refrain from making a claim should be enforced such that she could not accept a refund of contributions made by the husband."  *Id.* at *3-4.  We rejected that argument as follows:

> Considering the language contained in the various agreements, however, this is a distinction without a difference.  In *Bowers*, the parties simply agreed to relinquish "to the other any rights or claims not provided for herein," and the Court held that the beneficiary of a life insurance policy was not a "right" or a "claim" and did not necessarily arise out of the marriage relationship.  In the *Harris* cases, the agreement was much more comprehensive, and stated that each party waived and relinquished "all rights or claims which he or she may have or hereafter acquire under the law of any jurisdiction to the other's property," and went on to state that it applied to property currently owned or later acquired.  The *Harris* agreement explicitly contemplates current and future claims to current and future property.  The *Harris* agreement states the same obligation that is in the MDA before us in a different way, i.e. the obligation to refrain from making future claims to the other's property.

*Id.* at *4.

We also addressed the estate's separate argument that "the *Bowers* case was purely an insurance claim, which is not the exact nature of the benefit here."  *Id.* at *3.  The estate contended that "this case is distinguishable because it does not deal with a life insurance policy or other benefit that is payable only upon death, but rather involves money that decedent earned and contributed to the retirement plan."  *Id.* at *4.  We noted that *TIAA v. Harris*, 709 S.W.2d at 592, had "involved a situation similar to the case before us regarding a retirement annuity that provided death benefits," and this Court had deemed *Bowers* controlling in that case as well, as "the divorce and the property settlement agreement had no effect on the beneficiary designation, and there was no material distinction between annuity agreements and a life insurance policy."  *Id.*  We further noted the *Mathews v. Harris* decision of the Tennessee Supreme Court, 713 S.W.2d at 311, which relied on the

- 21 -

*Bowers* decision in a case involving the state employee retirement fund and accumulated contributions. *Id.* at \*3-4. Ultimately, we found "no basis to distinguish the precedents in the *Bowers* and its progeny from the facts of this case," and therefore, we were "constrained to affirm the Judgment of the Trial Court."[9] *Id.* at \*4.

Ten years later, this Court again found *Bowers* distinguishable from the facts of a case before us and decided to apply *Lunsford* instead. In *Manning v. Manning*, No. E2015-02082-COA-R3-CV, 2016 WL 3640317, at \*1 (Tenn. Ct. App. June 30, 2016), a husband and wife had entered into a marital dissolution agreement stating that they agreed to waive any interest in the other party's retirement account. The wife was listed as the beneficiary on the husband's account, and he did not effectuate a change to his account thereafter. *Id.* Upon his death, the former wife refused to sign documentation waiving her right to the benefits, so the administrator of the estate filed suit, seeking a declaratory judgment that she had waived any interest in the account pursuant to the marital dissolution agreement. *Id.* It provided:

> Each party agrees to waive any interest he/she may have in the other party's retirement. Wife agrees to waive any interest she may have in Husband's Eaton Vance Growth Fund, bank accounts and certificates of deposit.
> * * *
> Each of the parties shall execute, acknowledge and deliver any and all instruments and documents in writing which shall reasonably be required for purposes of effectuating the provisions and intent of this Marital Dissolution Agreement.

*Id.* During the wife's deposition, she acknowledged that "she agreed to execute any

---

[9] Also in 2006, this Court considered a case with a very complicated procedural history and unique facts involving a pension death benefit, in *Wing v. Parchman*, No. M2005-00273-COA-R3-CV, 2006 WL 940296 (Tenn. Ct. App. Apr. 11, 2006). There, a divorce decree originally awarded the wife "support" of $230 as alimony once the husband retired. *Id.* at \*1. The husband then retired and elected to receive a definite sum of payments over 10 years, and he designated his daughter as the person to receive the payments in the event of his death during that period. *Id.* However, a subsequent order required the husband to pay the wife $230 as her share of the pension as "a division of property in lieu of" spousal support. *Id.* The husband died, and a dispute arose between the wife and the daughter over the death benefit. *Id.* The trial court acknowledged that "it would have been neater if the court had ordered Mr. Wing . . . to make his wife the beneficiary" but it "did not do so" and "[n]obody dealt with the death benefit other than Mr. Wing, so thus one must look at the intent of the court's order." *Id.* at \*2. The trial court concluded that "this error or oversight by the court or [wife's] attorney [was] not fatal," as "the intent of the court was to divide the retirement benefits," the wife had a vested interest in them, and the husband's designation of the daughter as death beneficiary was in contravention of the court's decree regarding property division. *Id.* at \*1-2. We affirmed, concluding that the pension benefit was marital property, the wife was awarded an identified share of the monthly benefit, and the wife at the very least had an equitable claim to her marital share of the monthly benefit, making a constructive trust appropriate. *Id.* at \*3. We noted that "Tennessee courts have utilized equitable grounds to protect persons legally mandated to be listed as beneficiary of a life insurance policy" and likened the case to that situation. *Id.* (quoting *Holt*, 995 S.W.2d at 72).

- 22 -

waivers necessary to waive her claim to his retirement account." *Id.* However, she took the position that the husband's failure to remove her as the named beneficiary indicated his intent to gift the benefits to her. *Id.* The estate filed a motion for summary judgment, supported by the wife's deposition testimony, alleging that the wife "agreed that she would not have any claim to Husband's retirement" and "agreed that she would execute any writings necessary to waive any claim that she had to the retirement of Husband." *Id.* at *2. In response, the wife filed her own motion for summary judgment but again acknowledged that she had "agreed that she would execute any document to waive any claim as a beneficiary upon the same being presented to her." *Id.* The trial court held in favor of the wife "as the named beneficiary," citing *Bowers*. *Id.*

On appeal, the estate argued that "the facts presented in *Bowers* are inapposite to the facts presented in this case and that this case is more closely aligned to the factual scenarios presented in *Lunsford* and *In re Estate of Ellis*,[10] No. M2012-00585-COA-R3-CV, 2013 WL 1187419 (Tenn. Ct. App. March 20, 2013)[.]" *Id.* at *3. After discussing the facts in *Bowers* regarding the life insurance policy at issue, the fact that *Lunsford* involved a retirement account beneficiary, and *In re Estate of Ellis*, which involved funds in jointly titled checking accounts, we concluded,

---

[10] We note that *In re Estate of Ellis* involved a dispute over the ownership of funds in jointly titled checking accounts at banking institutions after a divorce and the death of the husband. 2013 WL 1187419, at *1. The marital dissolution agreement listed the two checking accounts as belonging to the husband, but he had not notified the bank of the ownership change before he died. *Id.* at *2. On appeal, we explained that a joint bank account with rights of survival is a binding contract between the joint owners of the account, but contracts can be modified, so we deemed the marital dissolution agreement as "tantamount to an amendment to their contract." *Id.* at *4. The marital dissolution agreement provided that the wife was divested of her interest in the checking accounts, so that agreement superseded the joint tenancy designation on the accounts. *Id.* Notably, however, this Court acknowledged that the ex-wife had cited "a series of other cases" on appeal, including *Bowers*, *Matthews v. Lawrence*, and *Estate of Williams*, which had also "involved an MDA or a property settlement agreement entered into in contemplation of divorce, and the failure of the husband to make subsequent changes to the disposition of the disputed property prior to his unexpected death." *Id.* at *5. We stated that "none of those cases involved a joint bank account and all of them can be distinguished from the present one." *Id.* We explained that *Bowers* involved a life insurance beneficiary designation, *Mathews* involved the beneficiary designation on a retirement account, and *Estate of Williams* involved the beneficiary designation on annuities, and therefore, "[t]he primary difference between the present case and the three we have just discussed involves the nature of the interests involved." *Id.* at *5-6. We noted the joint checking accounts at issue in *Estate of Ellis* met the definition of marital property, were appropriately included in the provisions of the marital dissolution agreement, and once that agreement was approved by the trial court, "both parties obtain[ed] a vested interest in the property allocated to them." *Id.* at *6. The wife argued that "the distinction our courts have drawn between joint bank accounts and other assets (such as life insurance contracts) that serve as 'will substitutes' is illogical and should not be upheld," but we observed that the changes she advocated simply had not been "incorporated into existing Tennessee law." *Id.*
  Just as the *Estate of Ellis* Court distinguished the *Bowers* line of cases involving beneficiary designations due to the nature of the interests involved, we likewise deem *Estate of Ellis* distinguishable from this case because it involved joint checking accounts.

- 23 -

The facts presented in *Bowers* are simply inapposite to the facts presented in this case. We agree with Administrator that this case is more closely aligned with the facts presented in *Lunsford* and to an extent, *Ellis*. Here, the MDA specifically addressed the divestment of Wife's interest in the retirement account at issue. An MDA incorporated into a final decree of divorce "is a contract which is binding on the parties." *Stiel v. Stiel*, 348 S.W.3d 879, 885 (Tenn. Ct. App. 2011). Generally, once a contract is formed it cannot be modified without consent and additional consideration for the new terms. *GuestHouse Intern., LLC v. Shoney's North America Corp.*, 330 S.W.3d 166, 190 (Tenn. Ct. App. 2010). While Husband failed to remove Wife as the named beneficiary, his failure does not evidence intent to modify when Wife possessed continuing obligations to waive any right she may have held in the account and to execute any documents reasonably required for the purpose of effectuating the provisions in the MDA. The record is simply devoid of any evidence establishing a modification of the MDA.

*Id.* at *3-4. Thus, we reversed the decision of the trial court and remanded for entry of summary judgment in favor of the estate. *Id.*

Finally, we note this Court's more recent opinion on the matters before us in *Voya Retirement Ins. & Annuity Co. v. Johnson*, No. M2016-00435-COA-R3-CV, 2017 WL 4864817 (Tenn. Ct. App. Oct. 27, 2017) *perm. app. denied* (Tenn. Feb. 14, 2018). *Voya* was another interpleader action, in which the court was asked to determine the proper beneficiary of death benefits from an employee's retirement plan. *Id.* at *1. The decedent's former wife and his estate both demanded the payment from the plan administrator. *Id.* The former wife was listed as the beneficiary on the retirement plan, but the estate argued that the beneficiary designation had been revoked by the couple's marital dissolution agreement. *Id.* The marital dissolution agreement had awarded the husband all right, title, and interest in "all retirement that he may have through his employment with the Metro Government." *Id.* The trial court ruled that the marital dissolution agreement revoked the beneficiary designation, so the benefits were payable to the estate. *Id.* The ex-wife appealed, arguing that "the MDA could not revoke the beneficiary designation in the [retirement] Plan." *Id.* Thus, the issue before us was whether the marital dissolution agreement should be construed as a revocation of the previous beneficiary designation. *Id.* at *2. We ultimately concluded that "the marital dissolution agreement did not revoke the previous beneficiary designation." *Id.* at *1. We deem it appropriate to quote our thorough discussion of the applicable principles:

Mr. Leary designated Ms. Johnson as his sole beneficiary and "failed to amend the beneficiary designation" after his divorce. But the chancery court ruled that the MDA revoked his beneficiary designation and denied Ms. Johnson's motion for judgment on the pleadings. We conclude that the chancery court erred in its application of Tennessee law to the undisputed

- 24 -

facts. As explained below, a beneficiary designation in a retirement plan may only be changed as provided in the plan. The MetroMax Plan required the plan participant to send a written request to the plan administrator to amend or revoke a beneficiary designation. Although the MDA is in writing, the language therein cannot be reasonably interpreted as a revocation of Mr. Leary's beneficiary designation. And Mr. Leary did not send the MDA to the plan administrator.

Our supreme court considered whether a property settlement agreement in a divorce proceeding could be construed as a revocation of a beneficiary designation in a life insurance policy in the seminal case of *Bowers v. Bowers*, 637 S.W.2d 456, 456-57 (Tenn. 1982). The *Bowers* court held that the property settlement agreement "had no force and effect whatever" on the husband's previous beneficiary designation. *Id*. at 459. And "neither the agreement nor the divorce terminated wife's status as named beneficiary in the policy or her right to receive the proceeds." *Id*. The *Bowers* court reasoned that a beneficiary's right to receive life insurance proceeds was governed by the terms of the insurance contract. *Id*. at 457-58.

Since *Bowers*, our courts have consistently looked to the terms of the relevant insurance contract to determine whether a purported change of beneficiary designation was effective. *See In re Estate of Williams*, No. M2000-02434-COA-R3-CV, 2003 WL 1961805, at *19 (Tenn. Ct. App. Apr. 28, 2003); *Travelers Ins. Co. v. Webb*, No. 01-A-01-9508-CH00379, 94-2051-III, 1996 WL 23491, at *3 (Tenn. Ct. App. Jan. 24, 1996). In this context, we draw no distinction between annuity contracts, retirement plans, and life insurance policies. *See Mathews v. Harris*, 713 S.W.2d 311, 313 (Tenn. 1986) (applying *Bowers* to the designated beneficiary of retirement benefits); *Mathews v. Lawrence*, 703 S.W.2d at 158 ("In the view of this Court, the status of [a] designated beneficiary of refund of contributions [to a retirement plan] is not materially different from the position of a designated beneficiary of an insurance policy."); *Teachers Ins. & Annuity Ass'n*, 709 S.W.2d 592, 595 (Tenn. Ct. App. 1985) ("Although the appellant in this case argues that there is a distinction between annuity agreements and a life insurance policy, we are unable to see any distinction.").

The chancery court determined that, when the plan administrator finally received a copy of the MDA after Mr. Leary's death, his beneficiary designation was revoked, consistent with the requirements of the MetroMax Plan. The chancery court focused on the following provision:

> RETIREMENT/PENSION ACCOUNTS: The parties agree that the Husband shall be awarded all right, title and interest in the following retirement/pension accounts:
> a. All retirement that he may have through his employment with the Metro Government[.]

- 25 -

The MDA is a contract. *Barnes v. Barnes*, 193 S.W.3d 495, 498 (Tenn. 2006). Because contract interpretation is a question of law, our review is de novo with no presumption of correctness. *Id*. We seek to ascertain and effectuate the parties' intent as expressed in the MDA, giving each word its natural and ordinary meaning. *Long v. McAllister-Long*, 221 S.W.3d 1, 9 (Tenn. Ct. App. 2006).

The retirement provision in the MDA did not revoke the beneficiary designation in the MetroMax Plan. Mr. Leary's retirement funds were marital property and thus subject to division in the MDA. *Cohen v. Cohen*, 937 S.W.2d 823, 828-29 (Tenn. 1996); *Mathews v. Lawrence*, 703 S.W.2d at 157. This provision awarded Mr. Leary sole control of his retirement account and extinguished any *marital right or interest* Ms. Johnson had in the account. Ms. Johnson's right to receive death benefits, however, depended solely on her status as the designated beneficiary. *See Bowers*, 637 S.W.2d at 457-58. Although Mr. Leary had the ability to change his designated beneficiary at any time by sending a written request to the plan administrator, he did not do so.

Even if the language in the MDA had been sufficient to revoke the beneficiary designation, Mr. Leary did not send the MDA to the plan administrator. We will not enforce "[a] mere unexecuted intention to change" a beneficiary designation. *Sun Life Assurance Co. v. Hicks*, 844 S.W.2d 652, 654 (Tenn. Ct. App. 1992) (quoting *Cronbach v. Aetna Life Ins. Co.*, 284 S.W. 72, 73 (Tenn. 1926)). Tennessee courts require substantial compliance with the plan's terms to give effect to a purported beneficiary change. *Id*. To sustain a finding of substantial compliance, "it must be determined from the record that [the plan participant] took all reasonable steps possible to meet the conditions imposed by the [plan]." *Id*. This record falls short of that standard. *See In re Estate of Williams*, 2003 WL 1961805, at *19 (affirming ruling in favor of the beneficiary although the beneficiary had agreed in an MDA to waive any claim to husband's annuities, when "no attempt was made to change the beneficiary in compliance with the annuity contract provisions").

Under these facts, we conclude that Mr. Leary's beneficiary designation was never revoked as provided in the MetroMax Plan. Thus, we reverse the chancery court's denial of Ms. Johnson's motion for judgment on the pleadings and the entry of judgment in favor of the Estate and remand this case for further proceedings consistent with this opinion.

*Id.* at *2-4.

As these cases demonstrate, Tennessee courts have consistently applied *Bowers* in cases involving marital dissolution agreements and their impact on beneficiary

designations, drawing no distinction between retirement plans, annuity contracts, and life insurance policies. *See Voya*, 2017 WL 4864817, at *3. In fact, *Voya* reiterated that "the reasoning in *Bowers* applies equally to the beneficiary designation in a retirement plan." 2017 WL 4864817, at *3 n.1. However, the trial court's order in this case, granting summary judgment in favor of Mr. Birdwell's estate, did not mention any of this caselaw, or any other legal authority aside from Tennessee Rule of Civil Procedure 56. Again, Ms. O'Dell argues that *Bowers* and its progeny are controlling. The estate relies on *Lunsford*, *Manning*, and *In re Estate of Ellis* (which we have already deemed distinguishable). We conclude that Ms. O'Dell has the better argument.

In *Lunsford*, this Court distinguished *Bowers* based on "the specific language" of the marital dissolution agreement in that case. 2005 WL 2572389, at *1. It provided that the wife waived "any right, title and interest which [] she may have now, or in the future, to any retirement *payment*," as if she had signed waiver forms releasing her aforementioned interest. *Id.* (emphasis added). In addition, she had a continuing duty to execute documents necessary to accomplish the purpose and intent of the agreement. *Id.* Thus, we said this specific language "differentiate[d]" the facts of *Lunsford* from the other cited cases and would have required her to execute a release of the retirement plan *death benefit*. *Id.* at *3.

The marital dissolution agreement in this case contains no such language. It only mentioned the retirement account itself. It provided that each party would "receive their own" retirement accounts, and Mr. Birdwell's retirement account would be his "sole and absolute property." As such, the case before us is more like *Estate of Williams*, where "the Williams MDA expressly referred to the annuity contract by name and number" and awarded it to the husband "free of any claim by Wife." 2003 WL 1961805, at *18-19. Even though the estate "attempted to distinguish *Bowers* on the grounds that the divorce decree in *Bowers* did not expressly address the life insurance policy at issue," we found there was "nothing about the language in the MDA to make inapplicable the principles" in *Bowers* and subsequent cases. *Id.* Although *Bowers* involved "general language" and the wife in *Estate of Williams* "agreed to waive any claim to the annuities themselves, the fact remain[ed] that no attempt was made to change the beneficiary[.]" *Id.* at *19. Because the MDA clearly awarded the annuities themselves to the husband, "he was free to name any beneficiary he chose," including his ex-wife, whether they were married or not. *Id.* Likewise, in *Voya*, the marital dissolution agreement specifically awarded the husband all right, title and interest in "all retirement that he may have through his employment with the Metro Government." 2017 WL 4864817, at *1. We held that "[t]his provision awarded [him] sole control of his retirement account and extinguished any *marital right or interest* [the wife] had in the account," but "[t]he retirement provision in the MDA did not revoke the beneficiary designation in the [retirement] Plan." *Id.* at *4. The same reasoning applies here.

We acknowledge that *Manning* also involved a marital dissolution agreement in which each party agreed "to waive any interest he/she may have in the other party's

- 27 -

retirement." 2016 WL 3640317, at *1. The *Manning* Court held that "[t]he facts presented in *Bowers* are simply inapposite to the facts presented in this case" and determined that "this case is more closely aligned with the facts presented in *Lunsford* and to an extent, *Ellis*." *Id.* at *4. We do not reach the same conclusion here. We deem the long line of cases from *Bowers* to *Voya* controlling.

The Estate also argues on appeal that this marital dissolution agreement "placed a continuing contractual obligation on [Ms.] O'Dell that would bind her to waive any current or future right she may have in the retirement account[.]" However, this is the same argument we rejected in *Shell*, 2006 WL 3193659, at *4. In that case, the decedent's estate similarly argued that the facts "should be distinguished from *Bowers* and its progeny because the parties' MDA contain[ed] a 'continuing' obligation of 'future' conduct, and thus the wife's contractual obligation to refrain from making a claim should be enforced such that she could not accept a refund of contributions made by the husband." *Id.* Considering the language of the various agreements addressed in the cases, however, we deemed this "a distinction without a difference." *Id.* In *Bowers*, the parties had agreed to relinquish "to the other any rights or claims not provided for herein." *Id.* (quoting *Bowers*, 637 S.W.2d at 456). In *TIAA v. Harris*, the agreement was "much more comprehensive," and stated that each party waived and relinquished "all rights or claims which he or she may have or hereafter acquire under the law of any jurisdiction to the other's property," and it went on to state that it applied to property currently owned or later acquired. *Id.* (quoting *TIAA v. Harris*, 709 S.W.2d at 592). Thus, we explained that the *TIAA v. Harris* agreement explicitly contemplated "current and future claims to current and future property." *Id.* In other words, the *Shell* Court explained, the *TIAA v. Harris* agreement stated "the same obligation that is in the MDA before us in a different way, i.e. the obligation to refrain from making future claims to the other's property." *Id.* Still, *Bowers* controlled. *Id.* As we noted above, the *TIAA v. Harris* provision, which was discussed at length in *Shell*, is nearly identical to the one in this case.

One final point deserves mention. As the United States Supreme Court observed in 2018,

> [C]limbing divorce rates led almost all States by the 1980s to adopt [a certain] kind of automatic-revocation law. So-called revocation-on-divorce statutes treat an individual's divorce as voiding a testamentary bequest to a former spouse. Like the old common-law rule, those laws rest on a "judgment about the typical testator's probable intent." [Sitkoff & Dukeminier, Wills, Trusts, and Estates] at 239. They presume, in other words, that the average Joe does not want his ex inheriting what he leaves behind.
> Over time, many States extended their revocation-on-divorce statutes from wills to "will substitutes," such as revocable trusts, pension accounts, and life insurance policies. *See* Langbein, *The Nonprobate Revolution and*

- 28 -

*the Future of the Law of Succession*, 97 Harv. L. Rev. 1108, 1109 (1984) (describing nonprobate assets). In doing so, States followed the lead of the Uniform Probate Code, a model statute amended in 1990 to include a provision revoking on divorce not just testamentary bequests but also beneficiary designations to a former spouse. *See* §§ 2-804(a)(1), (b)(1), 8 U.L.A. 330, 330-331 (2013). The new section, the drafters wrote, aimed to "unify the law of probate and nonprobate transfers." § 2-804, Comment, id., at 333. The underlying idea was that the typical decedent would no more want his former spouse to benefit from his pension plan or life insurance than to inherit under his will. A wealth transfer was a wealth transfer—and a former spouse (as compared with, say, a current spouse or child) was not likely to be its desired recipient. So a decedent's failure to change his beneficiary probably resulted from "inattention," not "intention." Statement of the Joint Editorial Bd. for Uniform Probate Code, 17 Am. College Trust & Est. Counsel 184 (1991). Agreeing with that assumption, 26 States have by now adopted revocation-on-divorce laws substantially similar to the Code's.

*Sveen v. Melin*, 584 U.S. 811, 814-15 (2018). Tennessee was not among those 26 states. *Id.* at 815 n.1.

> Although this expanded form of the revocation-upon-divorce doctrine has been in existence for a number of years now, Tennessee has been slow to join the movement toward expanding the revocation-upon-divorce doctrine and instead retains the doctrine largely in its original form. . . . [U]nlike the UPC, Tennessee law fails to extend the revocation-upon-divorce doctrine to will substitutes such as life insurance policies, retirement plans, or annuities, though it does apply the doctrine to trusts.

Hailey H. David, *The Revocation-Upon-Divorce Doctrine: Tennessee's Need to Adopt the Broader Uniform Probate Code Approach*, 39 U. Mem. L. Rev. 383, 385 (2009). "The Tennessee opinions surrounding the treatment of life insurance, retirement accounts, annuities, and trusts consistently use the same analysis and reasoning implied in one seminal case, *Bowers v. Bowers*, in which the Tennessee Supreme Court held that the revocation-upon-divorce doctrine did not apply to insurance policies." *Id.* at 400-01.

Our decision in this case is consistent with the body of Tennessee law currently governing the issue before us. Ms. O'Dell did not breach the parties' marital dissolution agreement by receiving the proceeds of the retirement funds upon the death of Mr. Birdwell. Thus, the trial court erred in granting summary judgment in favor of the Estate on the breach of contact claim. We reverse and remand for entry of summary judgment in

favor of Ms. O'Dell.[11]

## V. CONCLUSION

For the aforementioned reasons, the decision of the chancery court is hereby reversed and remanded. Costs of this appeal are taxed to the appellee, the Estate of Michael Birdwell, for which execution may issue if necessary.

_____
CARMA DENNIS McGEE, JUDGE

---

[11] We note that this appeal only involves a breach of contract claim filed by the Estate against Ms. O'Dell. The retirement plan administrator was not named as a defendant, and no issue of substantial compliance was asserted by the Estate in the trial court or in its brief on appeal.